## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES FARMER, *et al.*,

*Plaintiffs*,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,

*Defendants.*

CIVIL ACTION NO. 24-cv-1654 (DLF)

## PLAINTIFFS' RESPONSE IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

Laura Dumais, DC Bar No. 1024007
Public Employees for Environmental Responsibility
962 Wayne Avenue, Suite 610
Silver Spring, MD 20910
(202) 265-7337
ldumais@peer.org

Paula Dinerstein, D.C. Bar No. 333971
Public Employees for Environmental Responsibility
962 Wayne Ave, Suite 610
Silver Spring, MD 20910
(202) 265-7337
pdinerstein@peer.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

STATUTORY BACKGROUND ............................................................................................... 2

   A.   The Clean Water Act ..................................................................................................... 2

   B.   The Administrative Procedure Act ................................................................................ 3

FACTUAL BACKGROUND: EPA'S APPROACH TO SEWAGE SLUDGE .......................... 3

STANDARD OF REVIEW ...................................................................................................... 5

ARGUMENT ........................................................................................................................... 7

   A.   The biennial review provision imposes upon EPA the nondiscretionary duty to identify and regulate toxic pollutants that meet specified criteria .........................................7

   B.   EPA has an unmet statutory duty with respect to the PFAS listed in Plaintiffs' Table 2 (Plaintiffs' fourth cause of action). ........................................................................ 12

   C.   EPA has an unmet statutory duty with respect to the PFAS listed in Plaintiffs' Table 1 (Plaintiffs' first cause of action). ............................................................................. 15

   D.   Plaintiffs agree that their second and fifth causes of action lie within the Clean Water Act, not the Administrative Procedure Act, and may be dismissed. ................................ 16

   E.   Review of EPA's failure to identify certain PFAS in its biennial reviews (Plaintiffs' third cause of action) is available under Section 706(2) of the Administrative Procedure Act......... 16

CONCLUSION ........................................................................................................................ 20

i

## TABLE OF AUTHORITIES

**Cases**

*All. to Save the Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F. Supp. 2d 1 (D.D.C. 2007) ......17

*Armco, Inc. v. EPA,* 869 F.2d 975 (6th Cir. 1989) .................................................7, 8, 16

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015) ......................................6, 7

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ...................................................6

*Browning v. Clinton,* 292 F.3d 235 (D.C. Cir. 2002) .....................................................6

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) .....................................................3, 17

*Envtl. Def. Fund v. Thomas*, 870 F.2d 892, 898 (2d Cir. 1989) .....................................15

*FCC v. Prometheus Radio Project*, 592 U.S. 414 (2021) .............................................3

*Holloway v. Pagan River Dockside Seafood*, 669 F.3d 448 (4th Cir. 2012) .................................5

*INS v. Cardoza-Fonseca*, 480 U.S. 421, 447-448 (1987) .................................................10

*Lewis v. U.S. Parole Comm'n*, U.S. Dist. LEXIS 132889 *11 (D.D.C. 2024) .............................17

*Louisiana v. Biden,* No. LEXIS 115999, *32 (W.D. La. 2024) .....................................19

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 376 (2012) (citation omitted) ............................6

*Nat'l Res. Def. Council v. EPA*, 437 F. Supp. 2d 1137 (C.D. Cal. 2006) .....................................15

*Nat'l Res. Def. Council v. Reilly*, 1991 U.S. Dist. LEXIS 5334, *21 (D.D.C. 1991) ..................15

*Pinnacle Armor, Inc. v. United States*, 648 F.3d 708 (9th Cir. 2011) ...........................................18

*Riverkeeper v. Regan*, 2021 U.S. Dist. LEXIS 158305, *8-9 (D.C. Cir. 2021) ...........................14

*R.J. Reynolds Tobacco Co. v. Dep't of Agric.*, 130 F. Supp. 3d 356 (D.D.C. 2015) .......................7

*SAS Inst., Inc. v. Iancu*, 584 U.S. 357 (2018) ...............................................................6, 8

*Social Security Bd. v. Nierotko*, 327 U. S. 358, 369 (1946) ...........................................13

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ...........................................5

*U.S. Army Corps of Eng'rs v. Hawkes.*, 578 U.S. 590 (2016) ..........................................3, 18

*University of Tex. Southwestern Medical Center* v. *Nassar*, 570 U. S. 338 (2013) .......................10

*Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117 (D.D.C. 2011) .........................7

*Zook v. McCarthy*, 52 F. Supp. 3d 69, 74 (D.C. Cir. 2014) ...........................................11

**Statutes**

28 U.S.C. § 1331 ........................................................................................................6

5 U.S.C. § 551(13) ...................................................................................................18

5 U.S.C. § 706 ..........................................................................................3, 6, 17, 18

5 U.S.C. § 704 ..........................................................................................................17

*33 U.S.C. § 1345(d)(2)(A) .............................................2, 3, 7, 8, 9, 10, 11, 12, 15, 20, 21

33 U.S.C. § 1345(d)(2)(B) ....................................................................................2, 8

*33 U.S.C. § 1345(d)(2)(C) ...........................................1, 2, 4, 8, 9, 10, 18, 20, 21

33 U.S.C. § 1345(d)(2)(D) ........................................................................................3

33 U.S.C. § 1365(a)(2) ....................................................................................2, 6, 18

42 U.S.C. § 7408(a)(1)(A) .......................................................................................11

**Regulations**

40 C.F.R. Part 503 ....................................................................................................4

58 Fed. Reg. 9248-9404 (Feb. 19, 1993) .................................................................4

68 FR 61083, 61096 (Oct. 24, 2003) ........................................................................4

**Legislation and Reports**

"Relief for Farmers Hit with PFAS Act" bill, S. 74 118th Congress (2023-2024) ............................1

EPA OIG Report No. 19-P-0002 (Nov. 15, 2018) ........................................................5

**<u>INTRODUCTION</u>**

All parties agree that the biennial review provision of Clean Water Act Section 405(d)(2)(C) (33 U.S.C. § 1345(d)(2)(C)) imposes a nondiscretionary duty on EPA, but they disagree as to its scope. The provision's plain language requires EPA, at least every two years, to identify, "on the basis of available information" about specified criteria, those toxic pollutants in sewage sludge in need of regulation, and promulgate regulations for those substances identified. EPA contends, contrary to the statute's plain language and Congressional intent, that it may fulfill its biennial review duty by simply issuing informational reports every two years that list potentially harmful substances in sewage sludge, while postponing indefinitely the question of whether to regulate them, thus shielding the entire process from citizen suits under the Clean Water Act.

The PFAS at issue are not substances that simply "may" be present in sewage sludge in concentrations that "may" pose harms (the statutory criteria for identification and regulation); they *are* causing substantial harms on a widespread scale. While EPA expends its resources attempting to evade review, farmers are so frequently losing their livelihoods to PFAS contamination from sewage sludge that the United States Congress is currently considering the "Relief for Farmers Hit with PFAS Act" bill, S. 74 118th Congress (2023-2024). The potential for PFAS contamination is so severe that the spreading of sewage sludge on a *neighboring* property resulted in a calf that died on the Coleman Plaintiffs' property having PFOS levels so high that a person consuming one serving would exceed EPA's reference dose for PFOS exposure by 250,000 times. These "forever chemicals" can render the land where they are spread unfit for farming for generations.

EPA's argument that it need only issue a report every two years – that it has no statutory duty to determine whether or not to identify or regulate any particular chemicals in sewage sludge – is untenable. Plaintiffs respectfully request that this Court apply the plain language of the Clean Water Act's sewage sludge provision and reject EPA's unconvincing attempts to evade review.

1

## STATUTORY BACKGROUND

### A. The Clean Water Act

Clean Water Act (CWA) Section 505(a)(2) permits citizens to sue EPA for "a failure … to perform any act or duty under this chapter which is not discretionary." 33 U.S.C. § 1365(a)(2).

CWA Section 405(d)(2)(A) required the EPA Administrator, by November 30, 1986, to identify toxic pollutants in sewage sludge in need of regulation due to risks to public health and the environment and propose regulations for each pollutant identified. EPA:

> shall identify those toxic pollutants which, on the basis of available information on their toxicity, persistence, concentration, mobility, or potential for exposure, may be present in sewage sludge in concentrations which may adversely affect public health or the environment, and propose regulations specifying acceptable management practices for sewage sludge containing each such toxic pollutant and establishing numerical limitations for each such pollutant for each use identified under paragraph (1)(A).

33 U.S.C. § 1345(d)(2)(A)(i) (emphasis added). Congress further required that "Not later than August 31, 1987, and after opportunity for public hearing, the Administrator shall promulgate the regulations required by subparagraph (A)(i)." *Id*. § 1345(d)(2)(A)(ii) (emphasis added).

The statute also required, in a provision not at issue here, a second set of regulations for pollutants not addressed in the first round, with proposed regulations by July 31, 1987 and final regulations by June 15, 1988. *Id.* § 1345(d)(2)(B).

Congress also directed that EPA, not less often then every two years, "shall review the regulations promulgated under this paragraph for the purpose of identifying additional toxic pollutants and promulgating regulations for such pollutants consistent with the requirements of this paragraph." *Id*. § 1345(d)(2)(C) (emphasis added).

The regulations under (A), (B) and (C) all must "be adequate to protect public health and the environment from any reasonably anticipated adverse effects of each pollutant." *Id.*, § 1345(d)(2)(D).

2

**B. The Administrative Procedure Act**

APA Section 706(2)(A) enables courts to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." An agency action qualifies as "arbitrary" or "capricious" if it is not "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). "The Administrative Procedure Act embodies a basic presumption of judicial review and instructs reviewing courts to set aside agency action" pursuant to 5 U.S.C. § 706(2)(A), *Dep't of Com. v. New York*, 588 U.S. 752, 771 (2019) (citation and internal quotation marks omitted). An action is "final" under the APA if it marks the consummation of the agency's decision-making process and has legal consequences. *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016).

## FACTUAL BACKGROUND: EPA'S APPROACH TO SEWAGE SLUDGE

For factual background related to sewage sludge and the characteristics and dangers of PFAS, Plaintiffs refer the Court to their Second Amended Complaint, Doc. No. 12, ¶¶ 46-67, pages 16-22. In this background section, Plaintiffs explain EPA's approach to the biennial review provision.

Section 405(d)(2)(A)(i)-(ii) directed EPA to identify hazardous pollutants in sewage sludge in need of regulation and propose regulations by November 30, 1986, and to issue final regulations by August 31, 1987. When EPA failed to do so, it faced a citizen suit, *Gearhart v. Whitman*, Civ. No. 89–6266–HO (D. Ore.), that resulted in a consent decree requiring EPA to act. *See* 68 FR 61083, 61085 (Oct. 24, 2003).[1] In 1993, EPA finally promulgated the first – and only – sewage sludge limitations. 58 FR 9248 (Feb. 19, 1993) (40 CFR part 503, for eleven heavy metals and

---

[1] In the Federal Register, it is *Gearhart v. Reilly* because the EPA Administrator had changed since the original filing.

total hydrocarbons).[2] The consent decree was later amended to give EPA more time to identify additional toxic pollutants pursuant to section 405(d)(2)(B) (requiring a second round to identify pollutants EPA might have missed in round one). EPA later considered, but ultimately determined not to impose limits upon certain dioxins. 68 Fed. Reg. 61,083 – 61,096 (Oct. 24, 2003). EPA has not regulated any additional pollutants in sewage sludge since 1993, over 30 years ago, despite the fact that additional pollutants are present in sewage sludge that meet the standard for regulation.

As to the biennial review requirement at Section 405(d)(2)(C), EPA initially ignored it. The agency issued its first Biennial Report in 2006 – nineteen years after the first regulations were due in 1987 and thirteen years after the heavy metals regulations were published in 1993. EPA, Reporting Period 2005 Biennial Review (Jan. 2006).[3] For the past eighteen years, EPA has been churning out Biennial Review Reports, each of which identify toxic pollutants present in biosolids and collect publicly available information on their occurrence and concentration, toxicity to humans and ecological receptors, and environmental fate and transport. However, EPA has not promulgated a single regulation for any of the hundreds of substances listed therein. EPA claims to be still "developing a prioritization and risk screening process to evaluate pollutants found in biosolids." Biosolids Biennial Report Number 9 at 1.[4] This process falls well short of the mandatory duties under the statute.

---

[2] In the notice of those regulations, EPA acknowledged that the CWA required it to develop initial regulations for sewage sludge and then "revise these regulations periodically if additional information suggests the need for regulation of other pollutants," 58 FR at 9249, thus acknowledging that the biennial review requirement included a requirement to actually revise the regulations to add newly-identified pollutants, not just collect information for future analysis.

[3] *Available at* https://www.epa.gov/biosolids/biennial-report-no-1-reporting-period-2004-2005 (last accessed September 19, 2024).

[4] *Available at* https://www.epa.gov/biosolids/biennial-reviews-sewage-sludge-standards (last accessed Sept. 19, 2024).

In 2018, EPA's Office of the Inspector General issued a report identifying major problems with the biosolids program including the biennial review process and finding that "EPA has chosen to deprioritize the biosolids program and staff over time," EPA OIG Report No. 19-P-0002 at 12 (Nov. 15, 2018).[5]

## STANDARD OF REVIEW

A 12(b)(1) motion addresses jurisdiction: whether Plaintiffs have a right to be in the district court and whether the court has the power to hear and dispose of their claims. A district court has jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the . . . laws of the United States are given one construction and will be defeated if they are given another." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (internal quotation omitted). "[A] federal court's power to hear a case . . . is generally conferred by the basic statutory grants of subject matter jurisdiction, such as 28 U.S.C. § 1331 [federal question jurisdiction]. . . If a plaintiff invoking § 1331 pleads a colorable claim arising under the Constitution or laws of the United States, . . . he invokes federal subject matter jurisdiction, and deficiencies of the claim should be addressed by the other mechanisms provided by the federal rules." *Holloway v. Pagan River Dockside Seafood*, 669 F.3d 448, 453 (4th Cir. 2012) (internal citation omitted). Federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 376 (2012) (citation omitted).

Plaintiffs invoke federal question jurisdiction pursuant to 28 U.S.C. § 1331, as this civil action arises under two federal laws. The Clean Water Act provides that citizens may sue the EPA Administrator for failure to perform a nondiscretionary act or duty, 33 U.S.C. § 1365(a)(2) and

---

[5] Available at chrome- extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.epa.gov /sites/default/files/2018-11/documents/_epaoig_20181115-19-p-0002.pdf (last accessed Sept. 22, 2024).

that "[t]he district courts shall have jurisdiction . . . to order the Administrator to perform such act or duty . . .", *id.* § 1365(a)(2). The Administrative Procedure Act gives the reviewing court the power to "decide all relevant questions of law, interpret . . . statutory provisions, and determine the meaning or applicability of the terms of an agency action" for agency actions challenged under the APA. 5 U.S.C. § 706.

When deciding a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions." *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

In contrast, a 12(b)(6) motion merely "tests the legal sufficiency of a complaint." *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). In reviewing a motion to dismiss for failure to state a claim, the Court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

When evaluating a Rule 12(b)(6) motion, "a court generally does not consider matters beyond the pleadings." *R.J. Reynolds Tobacco Co. v. Dep't of Agric.*, 130 F. Supp. 3d 356, 369 (D.D.C. 2015). However, the court may "consider a document that a complaint specifically references," *Banneker Ventures*, 798 F.3d at 1133, or "documents upon which the plaintiff's

complaint necessarily relies," *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119-20 (D.D.C. 2011) (cleaned up).

**ARGUMENT**

**A. The biennial review provision imposes upon EPA the nondiscretionary duty to identify and regulate toxic pollutants that meet specified criteria.**

Plaintiffs' complaint alleges that EPA failed to meet the biennial review provision's mandatory requirements to identify and regulate toxics pollutants that meet specified criteria. EPA represents to this Court that it has fulfilled all of the biennial review provision's requirements by issuing Biennial Report Number 9, and thus there is no non-discretionary duty it has failed to meet. However, the scope of EPA's nondiscretionary duty is broader, and EPA's incorrect interpretation undermines the entire purpose of the provision.

When Congress initially charged EPA with ensuring the safety of sewage sludge to be land-applied as fertilizer, its first step was to require the agency to identify and regulate any hazardous substances in sewage sludge that, based on available information at the time, could pose health and environmental risks. Congress mandated that the EPA Administrator, by November 30, 1986:

> **shall** identify those toxic pollutants which, on the basis of available information on their toxicity, persistence, concentration, mobility, or potential for exposure, may be present in sewage sludge in concentrations which may adversely affect public health or the environment, **and propose regulations** specifying acceptable management practices for sewage sludge containing <u>each such toxic pollutant</u> and establishing numerical limitations for <u>each such pollutant</u> for each use identified under paragraph (1)(A).

33 U.S.C. § 1345(d)(2)(A)(i) (emphasis added). Congress gave EPA nine months to finalize those regulations after proposing them. *Id*. § 1345(d)(2)(A)(ii).

The use of the term "shall" generally imposes a mandatory duty. *SAS Inst. v. Iancu*, 584 U.S. 357, 362 (2018). EPA acknowledges that this provision is mandatory (Defs.' Br. at 2), and so did a federal circuit court. *Armco, Inc. v. EPA,* 869 F.2d 975, 981-82 (6th Cir. 1989) (holding "the

issuance of the sludge removal regulations to be non-discretionary functions of USEPA"). The Sixth Circuit specified federal district courts had jurisdiction over claims that EPA had failed to complete this duty, stating the district court "is equipped for hearings and to take evidence as to when the new sludge regulations will be issued" and calling it "the proper court to consider whether mandamus or other extraordinary relief is appropriate and under what circumstances or conditions mandamus would be made available." *Id.* at 982.

Congress recognized that additional toxic pollutants would need to be regulated based on evolving available information. It therefore created mandatory duties (denoted by "shall" commands) requiring EPA to engage in a second round of rulemaking shortly after the first, 33 U.S.C. § 1345(d)(2)(B), and then additional rounds at least every two years. *Id.*, § 1345(d)(2)(C) (the biennial review provision). Specifically, it required that the EPA Administrator, not less often than every two years, "<u>shall</u> review the regulations promulgated under this paragraph for the purpose of identifying additional toxic pollutants and promulgating regulations for such pollutants <u>consistent with the **requirements** of this paragraph</u>." In other words, this was not a "one and done" mandatory duty—EPA must continue to take action to regulate toxins in sewage sludge disposed of through land application.

"This paragraph" is paragraph (d) and specifically (d)(2)(A)(i): the nondiscretionary process of identifying pollutants to be regulated based on available information and specific criteria and regulating each one identified. *That the <u>requirements</u> are incorporated by reference does not make them any less mandatory*. The requirements incorporated by reference into the biennial review process include the low bar that Congress set for EPA in identifying and regulating toxic pollutants: namely when toxic pollutants "on the basis of available information on their toxicity, persistence, concentration, mobility **<u>or</u>** potential for exposure, **<u>may</u>** be present in sewage

sludge in concentrations which **may** adversely affect public health or the environment." *Id.* § 1435(c)(2)(A)(i). In other words, the biennial review provision includes Congress' order that EPA identify and regulate toxic pollutants when available information showed even a possibility of harm to health or the environment. This, of course, makes sense: what is the purpose of review if not to take action to regulate based on that review? EPA's interpretation means the agency may continue to put its head in the sand and ignore the science that shows the existence of toxic pollutants in biosolids.

This is the heart of the dispute between Plaintiffs and EPA about the scope of this provision. EPA admits that the statute imposes a mandatory duty, Defs.' Br. at 3, but contends that it does not require that the agency "actually identify additional toxic pollutants in any such review—only that it conducts the review every two years," Defs.' Br. at 11. Under EPA's interpretation, it has complete discretion to go on for decades without proposing regulations for toxic pollutants (no matter what any "available information" shows), and no citizen suit can ever reach the merits of EPA's failure to identify or regulate them as long as EPA issues a timely Biennial Report.[6] EPA's interpretation ignores the plain statutory language and rewrites the law.

The fundamental problem with EPA's interpretation is that it ignores the fact that the mandated biennial review is "for the purpose of identifying additional toxic pollutants and promulgating regulations." Congress did not want EPA merely to engage in an academic exercise every two years. Moreover, EPA ignores the crucial statutory language, "consistent with the requirements of this paragraph." Those requirements to identify and review pollutants that meet certain criteria are mandatory duties, just as they were in the first step of regulation that was due

---

[6] Note that the statute does not require a report at all, but that EPA identify additional toxic pollutants and promulgate regulations for them at least every two years.

in 1986. "Congress' choice of words is presumed to be deliberate" and deserving of judicial respect, and "so too are its structural choices." *University of Tex. Southwestern Medical Center* v. *Nassar*, 570 U. S. 338, 353 (2013). That the biennial review provision incorporates requirements of the paragraph within which it lies is a structural drafting choice and cannot be ignored. Courts "must reject administrative constructions which are contrary to clear congressional intent." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 447-448 (1987).

It cannot be disputed that EPA's duty to identify toxic pollutants and issue the initial set of regulations was non-discretionary. The continuing biennial duty to identify additional toxic pollutants warranting regulation – and promulgating regulations for them – is equally non-discretionary. There is no reason to distinguish the mandatory nature of these two requirements where one is simply a continuation of the other and is directed to be implemented under the same statutory requirements. Thus, contrary to EPA's assertion, the biennial review provision *does* require EPA to "actually identify additional toxic pollutants" for regulation and promulgate regulations for them: those meeting the criteria specified in 33 U.S.C. § 1345(d)(2)(A)(i). When those criteria show that a pollutant "may" adversely affect public health or the environment, EPA's duty is to identify and regulate it.

"May" is not a high bar; to the contrary, it is patently precautionary in nature and we can only assume that Congress meant it as such, for that was the language it chose. EPA's approach of requiring such extensive reviews and analyses (that it admits it is still figuring out how to conduct) that it has failed to even decide whether to regulate any single substance over a period of decades runs directly counter to the intent of Congress and the statutory language, which imposes a clear mandatory duty that EPA has left completely unaddressed.

Compare the clear language of the biosolids provision (33 U.S.C. § 1345(d)(2)(A) and (C)) to that of another statute that required EPA to identify and regulate certain pollutants, then to subsequently update the list: the Clean Air Act. That Act's Section 108(a)(1) directed EPA to publish in early 1971 – and revise "from time to time" – a list of air pollutants, "emissions of which, *in [the Administrator's] judgment*, cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare . . ." 42 U.S.C. § 7408(a)(1)(A) (emphasis added).[7] The D.C. Circuit determined it could not order EPA to add particular pollutants to the list because the statute explicitly leaves the endangerment determination to the EPA Administrator's judgment. *Zook v. McCarthy*, 52 F. Supp. 3d 69, 74 (D.C. Cir. 2014). "'[T]he use of 'in his judgment' reveals that Congress sought to assign the agency the responsibility to judge or determine *which* pollutants belong to the category the agency is required to regulate . . ." *Id.* (quoting *Friends of the Earth v. EPA,* 934 F. Supp. 2d 40, 49 (D.D.C. 2013).

The biennial review provision for sewage sludge contains no such broad grant of discretion. To the contrary, it specifies which toxic pollutants EPA "shall" identify <u>and</u> regulate: those "which, on the basis of available information on their toxicity, persistence, concentration, mobility, or potential for exposure, may be present in sewage sludge in concentrations which may adversely affect public health or the environment." 33 U.S.C. § 1345(d)(2)(A)(i). Congress knows how to draft broadly discretionary provisions and deliberately chose not to—EPA cannot add one now.

The PFAS at issue in this case ***dramatically*** exceed these criteria. There is no question that they "may" affect public health; they have. The high levels of PFAS contamination after the land-application of biosolids has made crops and livestock unfit for human consumption, resulting in

---

[7] By way of context, these are known as "criteria pollutants," because EPA is required to establish "air quality criteria" for them by setting National Ambient Air Quality Standards, after which individual states design plans to control emission sources accordingly.

the shuttering of farms in multiple states that have done testing, not to mention the toll on the health of the people and animals on those farms. This is a question for the merits, of course, but it is one that EPA may not evade through its disingenuous argument that the statute gives it complete discretion to ignore substances that meet the statutory criteria requiring identification and regulation.

**B.   EPA has an unmet statutory duty with respect to the PFAS listed in Plaintiffs' Table 2 (Plaintiffs' fourth cause of action).**

EPA has represented to this Court that Biennial Report No. 9 fulfills the agency's duty under Section 405(d)(2)(C). Defs.' Br. at 6. But since that provision requires EPA, for "each toxic pollutant identified" to "propose regulations specifying acceptable management practices . . . and establishing numerical limitations," EPA has not complied with all of its mandatory duties. EPA's Biennial Review No. 9 identifies the eleven PFAS that Plaintiffs name in Table 2 of their Second Amended Complaint, but EPA has not proposed regulations containing numerical limitations and acceptable management practices for them. Thus, EPA cannot evade review of Plaintiffs' fourth cause of action, alleging a failure of EPA to regulate the listed PFAS under the Clean Water Act. That issue remains to be determined on the merits.

Besides the fact that the statute requires every substance EPA identifies in the biennial review process to be regulated, the PFAS in Plaintiffs' Table 2 meet the statutory criteria requiring regulation. In the merits phase of this lawsuit Plaintiffs will provide evidence of available information showing these substances' toxicity, persistence, concentration, mobility, or potential for exposure (such as peer-reviewed scientific studies or data from state regulatory agencies) sufficient to meet Congress' precautionary bar that they "may be present in sewage sludge in concentrations which may adversely affect public health or the environment," 33 U.S.C. §1345(d)(2)(A)(i). Where this standard is met, EPA must propose regulations to address the effects

on public health and the environment and lacks discretion not to do so. As the Sixth Circuit explained in *Armco*, *supra* at 7, this Court is fully equipped to consider arguments on the merits about EPA's mandatory duties and to order relief including a reasonable time frame for EPA to meet them.

EPA appears to assert that the lists in its Biennial Reports are not lists of substances for regulation (as the statute requires), but simply running lists of substances present in biosolids with some information about them, and EPA will consider whether to regulate them in a separate future step with no discernable time frame. If so, then EPA has conceded that in the almost forty years since Congress enacted the biennial review provision, EPA has not ever complied with the statutory requirement to identify substances for regulation. It has not determined that even one substance on its list does or does not require regulation, thus it is out of compliance with the law, which requires EPA to identify which pollutants threaten Americans **and regulate them**. Although EPA may prefer a more leisurely process whereby it may gather information for decades without taking action, that is not what Congress mandated. An administrative agency must follow a statute's commands as written rather than supplanting them with others it may prefer. *Social Security Bd. v. Nierotko*, 327 U. S. 358, 369 (1946).

In sum, Plaintiffs have made entirely plausible claims that EPA has violated a non-discretionary duty in the statute with respect to the PFAS in Plaintiffs' Table 2, and the Court may order EPA to comply within a reasonable time. To be clear, Plaintiffs do not ask this Court, in an eventual merits decision, to tell EPA *how* to regulate these PFAS, *i.e.* what management practices and numerical limits to set; only that it must do so on a timeline consistent with timeframes in the statute.

And regulation should begin with the PFAS that Plaintiffs listed in their Table 2. EPA already listed them as potentially harmful toxic pollutants in its Biennial Reports, "available information" exists showing that they meet the statutory criteria for regulation, and, most significantly of all, they are currently causing a dangerous crisis across America that has led to the shuttering of farms and the poisoning of water and food products (not to mention the health and safety of farming families themselves). The unique characteristics of the manmade carbon-fluorine bond in PFAS mean that they do not break down in the environment for many, many decades.

In the alternative, should this Court find that EPA has a mandatory duty to determine which of the hazardous pollutants on its list to regulate, but that the order in which it will proceed is discretionary, EPA is still in violation of the law because thus far it has entirely failed to exercise that discretion. Even if some aspects of the process call for EPA's judgment and expertise, an agency is nonetheless <u>not</u> permitted to "refuse to exercise [its judgment] altogether." *Riverkeeper v. Regan*, 2021 U.S. Dist. LEXIS 158305, *8-9 (D.C. Cir. 2021) (quotation omitted*)*.

In this event, rather than an order to address the eleven PFAS on Plaintiffs' list immediately, this Court could instead establish a timeframe within which EPA must prioritize the substances to be regulated and proceed to regulate them, or a timeframe for EPA to make a "yes or no" determination as to whether the standards for regulation in the statute have been met for the PFAS in Plaintiffs' Table 2. *See Envtl. Def. Fund v. Thomas*, 870 F.2d 892, 898-900 (2d Cir. 1989) (where a Clean Air Act provision similar but less prescriptive than the biennial review provision required EPA to review certain regulations at five-year intervals, the district court had jurisdiction to require EPA "to make some formal decision whether to revise" the standards, without the Court dictating their substance.).

**C. EPA has an unmet statutory duty with respect to the PFAS listed in Plaintiffs' Table 1 (Plaintiffs' first cause of action).**

The same logic of the preceding section applies here as well. EPA has represented to this Court that Biennial Report No. 9 fulfills the agency's duty under Section 405(d)(2)(C). Defs.' Br. at 6. That provision incorporates by reference the requirement that that EPA "shall identify those toxic pollutants which, on the basis of available information on their toxicity, persistence, concentration, mobility, or potential for exposure, may be present in sewage sludge in concentrations which may adversely affect public health or the environment" and regulate them. Where these factors are met, EPA lacks the discretion to choose not to identify and regulate them. The substances listed in Plaintiffs' Table 1 meet these criteria, but do not appear in the list of substances within the very report that EPA itself claims fulfills its biennial review duties.

The statutory obligation is for EPA to identify *all* pollutants meeting the criteria and promulgate regulations for them. *See Nat'l Res. Def. Council v. EPA*, 437 F. Supp. 2d 1137, 1159-60 (C.D. Cal. 2006) (holding a similar biennial review scheme under the CWA creates a mandatory duty both to identify pollutants and promulgate regulations); *see also Nat'l Res. Def. Council v. Reilly*, 1991 U.S. Dist. LEXIS 5334, *21-*26 (D.D.C. 1991) (holding that EPA's statutory duty to promulgate biennial plans for effluent guidelines under the CWA is not met by a plan that identifies less than all industries currently known to be in need of regulation). In other words, EPA cannot simply leave substances which available information shows may harm human health or the environment off its list.

If EPA's position, as it appears to be, is that EPA does *not* intend the list in Biennial Report No. 9 (or anything within any of its previous eight Biennial Reports) as a list of substances for which EPA plans to promulgate regulations, the agency effectively concedes that its duty to

identify toxic substances in need of regulation remains wholly unfulfilled. Lists of substances to someday consider in more depth do not fulfill the statutory mandate.

In short, there is an outstanding mandatory duty to identify pollutants meeting the statutory criteria, including those that Plaintiffs list in Table 1. This Court may review this dispute on its merits. Again, as the Sixth Circuit explained in *Armco*, *supra* at 7, this Court is equipped to consider arguments regarding this mandatory duty and to order appropriate relief. In the alternative, as discussed *infra* at 16-20, the failure to list the substances on Plaintiffs' Table 1 is arbitrary and capricious and an abuse of discretion.

**D. Plaintiffs agree that their second and fifth causes of action lie within the Clean Water Act, not the Administrative Procedure Act, and may be dismissed.**

As discussed above, the biennial review provision and the other requirements incorporated therein by reference impose upon EPA a nondiscretionary duty that it has violated, providing this Court jurisdiction over Plaintiffs' claims under the Clean Water Act. Although EPA's multi-decade failure to comply with its statutory duties would surely constitute an action unlawfully withheld or unreasonably delayed under 5 USC § 706(1) if the Clean Water Act lacked a citizen suit provision, Plaintiffs agree that the second and fifth causes of action listed in their complaint may be dismissed given that the Clean Water Act provides an "adequate remedy in court," 5 U.S.C. § 704.

**E. Review of EPA's failure to identify certain PFAS in its biennial reviews (Plaintiffs' third cause of action) is available under Section 706(2) of the Administrative Procedure Act**

Plaintiffs' Count Three alleges that EPA's failure to include certain PFAS set out in Table 1 of their Second Amended Complaint in its biennial reviews is arbitrary and capricious or an abuse of discretion pursuant to 5 U.S.C. § 706(2)(A). "The Administrative Procedure Act embodies a basic presumption of judicial review and instructs reviewing courts to set aside agency

action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A)." *Dep't of Com,*, 588 U.S. at 771 (citation and internal quotation marks omitted). Plaintiffs assert this claim in the alternative to the claim in Count One that listing these substances is a non-discretionary duty that EPA failed to perform. Here instead, Plaintiffs claim that EPA's failure to identify these PFAS substances for regulation, despite meeting the statutory criteria for doing so, was arbitrary and capricious and an abuse of discretion. For this claim it is not necessary to assert a non-discretionary duty, but instead that EPA abused its discretion and was arbitrary and capricious in the way it applied, or failed to apply, the statutory standards to these substances, resulting in its failure to identify them.

A claim involving a failure to act such as this one can be brought under APA § 706(1) or § 706(2). *See All. to Save the Mattaponi v. United States Army Corps of Eng'rs*, 515 F. Supp. 2d 1, 9-10 (D.D.C. 2007) (collecting cases) (failures to act fall under the scope of both § 706(1) and § 706(2)); *accord*, *Lewis v. United States Parole Comm'n*, No. 22-cv-2182-RCL, 2024 U.S. Dist. LEXIS 132889 at *11-12 (D.D.C. July 29, 2024) (agency inaction can be challenged under § 706(2)).

EPA does not argue, as it does with respect to Counts Two and Five, brought under APA § 706(1), that this claim fails because there is an adequate remedy in the CWA for the same claim. EPA argues only that Plaintiffs cannot bring a claim under APA section § 706(2) because there is no final agency action to challenge.[8] EPA does not assert any other grounds for unreviewability

---

[8] Final agency action is a requirement under APA § 706(2) but not under the CWA citizen suit provision or under APA § 706(1). A citizen suit under the CWA for "a failure … to perform any act or duty under this chapter which is not discretionary," 33 U.S.C. § 1365(a)(2), concerns a failure to act and therefore does not require a challenge to final agency action. Similarly, an APA claim under § 706(1), which authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed," addresses failures to act and does not require meeting the usual test for "final agency action" under the APA. *See W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1248

under the APA, which would apply only "when Congress expressly bars review by statute," *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 719 (9th Cir. 2011) (citing 5 U.S.C. § 701(a)(1)) – a circumstance not alleged here – or when "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2) – a claim also not made here.

EPA claims that the final agency action requirement is not met because the biennial review is not an agency action, and even if it is, it is not a final one. First, it is unclear how a "final agency action" requirement even applies when the claim is a failure to act. However, assuming it does apply, EPA cannot have its cake and eat it, too. EPA claims that the biennial review meets its duty under the CWA, 33 U.S.C. § 1345(d)(2)(C), to identify additional toxic pollutants and promulgate regulations. Defs.' Br. at 6. Therefore, the biennial review is a regulatory document, or at least "the equivalent thereof" encompassed under 5 U.S.C. § 551(13) ("the whole or a part of an agency rule, order, license, sanction, relief or the equivalent or denial thereof, or failure to act.").

It is also a final agency action, because it is the consummation of the agency's decision-making process concerning which pollutants in sewage sludge should be regulated, and has legal consequences, which in this case is to allow the continued application of harmful PFAS to farmland without regulation. *See Hawkes.*, 578 U.S. at 597 (An action is "final" under the APA if it marks the consummation of the agency's decision-making process and has legal consequences.)

It is only EPA's misinterpretation of its duty under § 1345(d)(2) to identify pollutants *for regulation*, discussed above, that could turn the biennial review into something other than a final agency action that has legal consequences. EPA claims it is only required to do a review, but that the statute "does not require EPA to actually identify additional toxic pollutants," or to regulate

(2018) (Edwards, J. concurring) (a claim under § 706(1) does not require meeting a final agency action requirement).

18

anything, Defs.' Br. at 6, and that the biennial review serves only to "help identify pollutants for potential regulation" that is many steps away. *Id.* at 9-10. This interpretation is contrary to the plain language of the statute and clear congressional intent. EPA's actual duty under the statute is to identify pollutants <u>and</u> regulate them. In fact, the failure to identify a substance in the biennial review is in effect a decision not to regulate it, which has legal effect.

The fact that the decision to list or not list a substance in a particular biennial review could be reversed in a future such review or be determined differently in a hypothetical future petition for rulemaking, does not deprive the decision in the current biennial review of finality. Agencies are always able to change decisions or do something different in the future, but that does not render a current operative decision lacking in finality or reviewability. *See Louisiana v. Biden,* No. 2:24-CV-00406, 2024 U.S. Dist. LEXIS 115999, *32-34 (W.D. La. July 1, 2024) (finding an agency decision to temporarily pause determinations of certain export applications is final agency action even though it will be subject to further consideration because it has a current effect).

If EPA <u>had</u> identified these PFAS substances for regulation and issued a proposed rule as the statute requires upon such identification, the proposed rule might be considered non-final and not challengeable until a final rule is issued. However, because EPA failed to identify and regulate these PFAS, its decision not to act and not to regulate is final – there are no further steps to be taken. Under EPA's interpretation of the law, its failure to regulate known toxic pollutants present in sewage sludge would never be subject to judicial review because it could always decide to regulate in the future.

The challenge here is to the failure to identify these substances for regulation, which is claimed to be arbitrary and capricious because in fact the standards for regulation set out in the statute were met – *i.e.*, that "on the basis of available information on their toxicity, persistence,

concentration, mobility, or potential for exposure, may be present in sewage sludge in concentrations which may adversely affect public health or the environment."   33 U.S.C. § 1345(d)(2). Plaintiffs are asking the Court to review EPA's final decision (which has legal consequences) not to identify these pollutants against the statutory standards to determine whether the decision was arbitrary or an abuse of discretion. This claim is reviewable pursuant to APA § 706(2) and should not be dismissed.

## **CONCLUSION**

Almost forty years ago, Congress required EPA to ensure the safety of land-applied sewage sludge by regularly reviewing regulations to identify additional toxic pollutants and regulate them. 33 U.S.C. § 1345(d)(2)(C). In all that time, EPA has simply issued informational reports without determining whether a *single substance* listed in any of them does or does not require regulation. In the interim, PFAS contamination has become a national crisis that deepens with every new load of sewage sludge spread as fertilizer, rendering previously arable farmland and ranchland unusable for generations and destroying lives and livelihoods.

The main issue here is the scope of the nondiscretionary duties that 33 U.S.C. § 1345(d)(2)(C) (and its incorporation of the requirements of § 1345(d)(2)(A)(i)) imposes upon EPA. EPA has a duty to ensure that the biennial review process functions to identify and regulate substances that meet the given statutory criteria. Because the statute imposes mandatory duties EPA has failed to perform, this Court has clear jurisdiction to consider the merits of Plaintiffs' claims. The statute does not dictate, nor do Plaintiffs ask this Court to prescribe, what EPA's ultimate regulations would entail. Plaintiffs seek only a declaration that EPA is in violation of the statute for failing to consider identify and regulate certain PFAS for which available information exists to do so, and an order providing a timeline within which EPA must comply with its statutory

duties. Further, the Court should find that EPA's arbitrary and capricious failure to include certain toxic pollutants in its biennial review is a reviewable final agency action under the APA.

For the reasons stated above, this Court should deny Defendants' motion to dismiss.

Respectfully submitted on September 23, 2024,

/s/ Laura Dumais
Laura Dumais, DC Bar # 1024007
Public Employees for Environmental Responsibility
962 Wayne Avenue, Suite 610
Silver Spring, MD 20910
(202) 265-7337 / ldumais@peer.org

/s/ Paula Dinerstein
Paula Dinerstein, D.C. Bar No. 333971
Public Employees for Environmental Responsibility
962 Wayne Ave, Suite 610
Silver Spring, MD 20910
(202) 265-7337 / pdinerstein@peer.org

*Counsel for Plaintiff*