IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES FARMER, ROBIN ALESSI, PATSY SCHULTZ, KAREN COLEMAN, TONY COLEMAN, JOHNSON COUNTY, TEXAS, MAINE ORGANIC FARMERS AND GARDENERS ASSOCIATION, and POTOMAC RIVERKEEPER, INC., d/b/a POTOMAC RIVERKEEPER NETWORK<br><br>        Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and MICHAEL REGAN, in his official capacity as Administrator of the United States,<br><br>        Defendants,<br><br>and<br><br>NATIONAL ASSOCIATION OF CLEAN WATER AGENCIES,<br><br>        Intervenor-Defendant. | Civil Action No. 24-cv-01654-DLF<br><br>Hon. Dabney L. Friedrich |

**INTERVENOR-DEFENDANT NACWA'S MOTION TO JOIN DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Intervenor-Defendant National Association of Clean Water Agencies ("NACWA") joins in and adopts Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 13) as well as the accompanying Memorandum in Support (ECF No. 13-1) ("EPA's Motion to Dismiss"). NACWA is a national non-profit trade association representing the interests of over 350 clean water agencies managing wastewater and stormwater across the country, an essential public infrastructure function that touches every American. NACWA adopts EPA's arguments, and

1

the Court can and should dismiss the Second Amended Complaint ("Complaint") based on those reasons alone. Below, NACWA provides further support for EPA's Motion to Dismiss that will aid the Court's consideration of the issues.

## INTRODUCTION AND BACKGROUND

Plaintiffs' Complaint fails to state claims under the Clean Water Act ("CWA") and the Administrative Procedure Act ("APA") and is a blunt effort to derail and countermand EPA's science-based regulatory process for considering per- and polyfluoroalkyl substances ("PFAS") in biosolids. Plaintiffs ask the Court to order EPA to regulate 29 individual PFAS in biosolids before EPA has completed its risk assessment and evaluation of the need for such regulation.[1] Specifically, Plaintiffs seek inclusion of 18 PFAS in EPA's Biosolids Biennial Report No. 9 (Table 1 PFAS) as a step toward regulation and demand that EPA promulgate regulations now for 11 PFAS identified in previous Biennial Reports (Table 2 PFAS).[2]

Dismissal of the Complaint under Fed. R. Civ. Pro. 12(b)(6) is not a close call. Plaintiffs have not and cannot identify any non-discretionary duty to regulate PFAS under the Clean Water Act. Nor is there any final agency action to challenge under the APA – EPA has listed certain PFAS for further study and is methodically conducting such studies through risk assessments. This could culminate in EPA proposing to amend the rules governing biosolids, found at 40 C.F.R. Part 503, through notice and comment rulemaking that would then yield a challengeable rule on PFAS in biosolids. Or it could result in a finding by EPA that such amendments are not warranted.

---

[1] This memorandum uses the term "biosolids," to refer to the treated wastewater residuals meeting the requirements of 40 C.F.R. Part 503.

[2] The Complaint lists the 18 PFAS EPA allegedly failed to identify under Table 1 and the 11 PFAS EPA has allegedly failed to regulate under Table 2. Second Am. Compl. ¶¶ 10–11, ECF No. 12.

Plaintiffs here instead leverage inflammatory allegations regarding risks from PFAS in an attempt to persuade the Court to override EPA's procedures and ongoing plans for assessing risks in biosolids which the agency has publicized and invited input on for years.[3]  Court intervention at this stage would unravel this process and sow turmoil in a major EPA program.

Biosolids are regulated under CWA Section 405(d) and detailed EPA regulations promulgated in 1993 after a multi-year risk assessment and notice and comment rulemaking. 40 C.F.R. Part 503 ("Part 503 Rules").  For decades PFAS – long used in textiles, cookware, packaging, and many other applications – have been ubiquitous in the environment in trace quantities, including wastewater which flows from homes, institutions, and businesses to POTWs.  Evaluating and managing PFAS is an environmental and public health challenge which NACWA's members have and will continue to play a vital stewardship role in.  This challenge requires carefully following the legally-mandated, science-based approach to PFAS regulation in biosolids so NACWA members can continue to safely and efficiently manage the tens of thousands of tons of biosolids generated every day across the United States.

Plaintiffs' attempt to short-circuit this regulatory process by having the Court mandate PFAS regulations now has no basis in CWA citizen suit law or APA jurisprudence.  The language and structure of Section 405(d) readily demonstrate that there is no non-discretionary duty to identify specific PFAS compounds for study or regulation; indeed, Section 405(d)(2)(C) only requires that EPA perform a biennial review, and leaves the question of whether additional pollutants should be identified and, if necessary, regulated, to EPA's discretion.  Additionally, Plaintiffs have failed to identify a final agency action subject to challenge under either Section 405

---

[3] EPA, *Per- and Polyfluoroalkyl Substances (PFAS) in Biosolids*, https://www.epa.gov/biosolids/and-polyfluoroalkyl-substances-pfas-biosolids.

of the Clean Water Act or the Administrative Procedure Act, 5 U.S.C. § 706(2)(a), because EPA has not reached the end of its multi-step decision-making process—which requires, among other things, a regulatory process that includes consideration of public input.

## ARGUMENT

**A.   Plaintiffs' CWA citizen suit claims fail to identify a non-discretionary duty to regulate PFAS in biosolids.**

Plaintiffs' effort to compel EPA to regulate PFAS compounds of Plaintiffs' choosing under no circumstances implicates any non-discretionary duty of the agency and does not state a cause of action.  In fact, EPA has already met its statutory duties to regulate, and consider further regulations, of pollutants in biosolids pursuant to Section 405(d) of the Clean Water Act, including PFAS.  The Complaint seeks to impose additional duties on EPA that have no basis in the statutory text.

Section 405(d) of the Clean Water Act establishes both non-discretionary duties for EPA and actions that EPA may take at its discretion.  Section 405(d)(2)(A) & (B)—which are not at issue in this case—set forth non-discretionary duties for the initial regulation of toxic pollutants in biosolids.  EPA accomplished this duty in 1993 when it promulgated the Part 503 rules.

This case involves the study and potential regulation in biosolids of PFAS, which are a broad category of substances considered to be emerging pollutants that were not directly considered in the original rounds of biosolids regulation (the Part 503 rules did undertake an investigation of the environmental and health impacts generally of applying biosolids to farmland, and found no adverse impacts).  Accordingly, the provision at issue in this case is Section 405(d)(2)(C), which creates *a duty for EPA to review the existing biosolids regulations*, but it does not create any nondiscretionary duty to take any further action:

> From time to time, but not less often than every 2 years, the Administrator shall *review* the regulations promulgated under this paragraph [i.e., those promulgated

4

under CWA section 405(d)] *for the purpose of* identifying additional toxic pollutants and promulgating regulations for such pollutants consistent with the requirements of this paragraph.

33 U.S.C. § 1345(d)(2)(C) (emphasis added).  The language following the words "for the purpose of" explains the reason for the biennial review process—namely, to "identify[] additional toxic pollutants" and "promulgat[e] regulations for such pollutants."  EPA *may* decide to identify additional pollutants or to regulate them based on the information it considers, but Section 405(d)(2)(C) properly leaves that highly technical decision to EPA's discretion.  The only requirement of Section 405(d)(2)(C) is that EPA conduct the review on the prescribed schedule.  As Plaintiffs acknowledge, EPA satisfied this requirement by publishing Biennial Report No. 9 in December 2022.

The structure of Section 405(d) reinforces that Congress understood how to create nondiscretionary duties for EPA in this context—and that it chose to only create such a duty to undertake a biennial review.  For example, the proceeding paragraphs state that EPA "shall identify toxic pollutants . . . and propose regulations" by dates certain.  *See, e.g.,* § 1345(d)(2)(A)(i); *see also* § 1345(d)(2)(A)(ii) (specifying date certain by which EPA "shall promulgate" final regulations).  Congress, however, only employed that language of command in Section 405(d)(2)(C) to describe the review.  *See* § 1345(d)(2)(C) (noting EPA "shall review the regulations…").  It does *not* state that EPA "shall" identify additional pollutants or propose or promulgate regulations for any new pollutants, nor does the statute stipulate any deadline for such actions.[4]  Any other interpretation would contradict and undermine longstanding mechanisms of

---

[4] The clause "consistent with the requirements of this paragraph" at the end of Section 405(d)(2)(C) reinforces this structural interpretation.  The use of the word "paragraph" (as compared to "subparagraph") signals Congress' intent to reference Section 405(d) overall—and specifically the procedures for promulgating regulations under Section 405(d)(1).  Notably,

5

federal environmental law under which EPA studies, identifies, and solicits input on pollutants and then engages in risk assessments and rule makings.

Because the only non-discretionary obligation EPA has under Section 405 is to conduct the biennial review, the contents of such review remain within EPA's discretion. For this reason, Plaintiffs' claim that 18 PFAS should be included in the biennial report lacks merit, based on Plaintiffs' biased interpretation of certain scientific literature. Plaintiffs fail to identify any mandatory duty to either regulate the 11 PFAS in Table 2 of the Complaint or include in a future biennial report the 18 PFAS in Table 1.

Section 405(d)(2)(C) cannot be read to create any clearly mandated, non-discretionary duty under the CWA requiring EPA to identify and regulate toxic pollutants. *See D.C. v. Schramm*, 631 F.2d 854, 859 n.10, 862 (D.C. Cir. 1980) (discretionary duties under CWA are not reviewable in federal court); *Nat'l Wildlife Fed'n v. Browner*, No. CIV. A. 95-1811(JHG), 1996 WL 601451, at *5 (D.D.C. Oct. 11, 1996), aff'd, 127 F.3d 1126 (D.C. Cir. 1997) (the discretionary nature of a statutory provision places it "beyond the reach of the citizen suit provisions of Section 505"). Accordingly, Plaintiffs' first and fourth claims fail to identify a non-discretionary duty and should be dismissed.

### B. Plaintiffs cannot allege a final agency action, which requires multiple steps and includes public participation.

EPA's Biennial Report No. 9 is not a final agency action. The biennial review is merely a "tentative or interlocutory" step within EPA's evaluation of the biosolids regulations and not the

---

Sections 405(d)(1) and 405(d)(2)(C) are the only places where the phrase "from time to time" are used—indicating a future-looking obligation. Interpreting the cross-reference language to refer specifically to Section 405(d)(2)(A) and (B) is illogical since those subparagraphs do not have any forward-looking language—and include stipulated deadlines that are well in the past. Accordingly, Plaintiffs' interpretation of Section 405(d)(2)(C) would result in the absurd conclusion that EPA would have to propose and promulgate regulations based on its biennial review by a date that is impossible to meet.

"consummation" of the decision-making process that decides whether to regulate additional pollutants in biosolids. *See Bennett v. Spear*, 520 U.S. 154, 178 (1997). The government's Motion to Dismiss describes the multiple steps necessary to identify, evaluate, and (if necessary) regulate additional pollutants in biosolids. EPA's Motion to Dismiss 10, ECF No. 13-1. Section 405 of the Clean Water Act requires that, when formulating any such regulations, EPA shall engage stakeholders and incorporate public input that informs the agency's ultimate decision. *See* 33 U.S.C. § 1345(d)(1) ("The Administrator, *after consultation with . . . other interested persons*, shall develop and publish . . . from time to time . . . regulations providing guidelines for the disposal of sludge and the utilization of sludge for various purposes.") (emphasis added). The Federal Register notice for the seminal Part 503 rules illustrates how EPA painstakingly solicited and considered public comment in multiple phases and on a wide range of issues (including risk assessment) prior to promulgating *Standards for the Use or Disposal of Sewage Sludge*. 58 Fed. Reg. 9,248, 9,267–68 (Feb. 19, 1993).[5]

Biennial Report No. 9 is an initial (and, therefore, interim) step in EPA's overall process for regulating pollutants in biosolids, including PFAS. Indeed, the Report identified 3 PFAS compounds based on EPA's expert assessment of the state of the science. As shown by the government's flow chart, a substance identified in a biennial report still must go through

---

[5] *See* 58 Fed. Reg. 9247, 9267-9270. EPA solicited extensive public comment after publishing its November 9, 1990 Notice of Availability of Information and Data, the scope of which included, among other things, human health and environmental criteria that could be used in establishing numerical limits, risk analyses, anticipated benefits and costs of the rule, and data deficiencies. EPA received comments from 656 commenters, including 278 municipalities and numerous associations, during the 183-day comment period. EPA additionally worked with two peer review groups consisting of nationwide experts (both inside and outside the EPA), that provided a comprehensive range of opinions, comments, and recommendations. This public comment effort was just one of many that EPA held during the overall development of the regulations—for example, EPA also solicited comments on data in a National Sewage Sludge Survey.

preliminary risk screening and a risk assessment *before* EPA considers regulation. And, in order to proceed with promulgating any new requirements, both Section 405 and the APA require a public input process. *See* 33 U.S.C. § 1345(d)(1); 5 U.S.C. § 553(c). Since the biennial report does not have any formal public input component, and because several interim items still remain before EPA can promulgate any new requirements for PFAS in biosolids, the biennial report cannot be construed as a final agency action, and Plaintiffs' claims should be dismissed.

## CONCLUSION

EPA has rightly prioritized the study of PFAS in the environment and has enacted regulations under the Safe Drinking Water Act for certain PFAS compounds in drinking water, among many initiatives. EPA is undertaking a similar science-based process for biosolids regulation under the Clean Water Act, which NACWA supports and participates in. Unfounded lawsuits like Plaintiffs' do not support and only distract from this process. For the reasons set forth herein, the Court should dismiss this action.

Dated: September 26, 2024                    Respectfully submitted,

                                            */s/ James B. Slaughter*
                                            BEVERIDGE & DIAMOND, P.C.
                                            James B. Slaughter (D.C. Bar No. 417273)
                                            jslaughter@bdlaw.com
                                            1900 N Street NW, Suite 100
                                            Washington, DC 20036
                                            Phone: (202) 789-6000

Allyn L. Stern (*pro hac vice to be filed*)
astern@bdlaw.com
600 University Street, Suite 1601
Seattle, WA 98101-3109
Phone: (206) 315-4800

Thomas P. Kolkin (*pro hac vice to be filed*)
tkolkin@bdlaw.com
201 North Charles Street, Suite 2210
Baltimore, MD 21201
Phone: (410) 230-1300

*Counsel for National Association of Clean Water Agencies*

NATIONAL ASSOCIATION OF CLEAN WATER AGENCIES
Amanda Aspatore
AAspatore@nacwa.org
1130 Connecticut Ave NW, Suite 1050
Washington, DC 20036
Phone: (202) 833-2672

9

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2024, a true copy of the foregoing Intervenor-Defendant NACWA's Motion to Join Defendants' Motion to Dismiss was filed using the CM/ECF system and notice sent by the Court's electronic filing system to:

    */s/ James B. Slaughter*
James B. Slaughter (D.C. Bar No. 417273)