**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAMES FARMER, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br>*Defendants.* | CIVIL ACTION NO. 24-cv-1654 (DLF) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO NATIONAL ASSOCIATION OF CLEAN WATER AGENCIES' MOTION TO INTERVENE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. NACWA IS NOT ENTITLED TO INTERVENE AS OF RIGHT ........ 2

A. NACWA does not satisfy the "interest" prong of the as-of-right test for intervention. . 3

B. NACWA has not shown that the disposition of the action may as a practical matter impair or impede its ability to protect its alleged interests. ........ 6

C. NACWA has failed to rebut the presumption of adequate representation by EPA. ........ 9

II. NACWA SHOULD NOT BE GRANTED PERMISSIVE INTERVENTION ........ 10

III. SHOULD THIS COURT ALLOW INTERVENTION, IT SHOULD IMPOSE RESTRICTIONS TO PROMOTE EFFICIENCY AND MINIMIZE PREJUDICE. ........ 12

CONCLUSION ........ 14

## TABLE OF AUTHORITIES

**Cases**

**Alternative Research & Dev. Found. v. Veneman*
262 F.3d 406 (D.C. Cir. 2001) ....................6

*Armco, Inc. v. EPA*
869 F.2d 975 (6th Cir. 1989) ....................5

*Ass'n of O&C Counties. v. Trump*
No. CV 17-280, 2018 WL 11241964 (D.D.C. 2018) ....................11

*Biden v. United States IRS*
U.S. Dist. LEXIS 175304 (D.D.C. 2024) ....................10

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*
340 F.R.D. 1 (D.D.C. 2021) ....................10, 11

*Ctr. for Food Safety v. United States EPA*
U.S. Dist. LEXIS 53395 (D.D.C. 2024) ....................3, 13

*Cobell v. Jewell*
2016 U.S. Dist. LEXIS 199137 (D.D.C. 2016) ....................9

*Defs. of Wildlife v. Perciasepe*
714 F.3d 1317 (D.C. Cir. 2013 ....................2, 3

**Envtl. Integrity Project v. McCarthy*
319 F.R.D. 8 (D.D.C. 2016) ....................4, 6, 7

*EEOC v. National Children's Ctr.*
146 F.3d 1042 (D.C. Cir. 1998) ....................10

*In re Vitamins Antitrust Litig.*
U.S. Dist. LEXIS 25068 (D.D.C. 2001) ....................10

*J.B. Stringfellow, Jr. v. Concerned Neighbors in Action*
480 U.S. 370 (1987) ....................12

*Karsner v. Lothian*
532 F.3d 876 (D.C. Cir. 2008) ....................3

*Loper Bright Enters. v. Raimondo*
144 S. Ct. 2244 (2024) ....................2

*Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt.*
205 F.R.D. 1 (D.D.C. 2000) ....................12

*Nat. Res. Def. Council v. Costle*
561 F.2d 904 (D.C. Cir. 1977) ....................6

*Sierra Club v. McCarthy*
308 F.R.D. 9 (D.D.C. 2015) ....................10

*Smoke v. Norton*
252 F.3d 468 (D.C. Cir. 2001) ....................10

*United States v. Am. Tel. and Tel. Co.*
642 F.2d 1285 (D.C. Cir. 1980) ....................3, 9

*Wildearth Guardians v. Salazar*
272 F.R.D. 4 (D.D.C. 2010) ....................12

**Statutes**

33 U.S.C. § 1345 ....................1

*33 U.S.C. § 1345(d)(2)(A) .................... 5

*33 U.S.C. § 1345(d)(2)(C) ....................4, 5

**Rules**

Fed. R. Civ. P. 24(a) .................... 2, 3, 4, 7

Fed. R. Civ. P. 24(b) .................... 10, 11

## INTRODUCTION

Plaintiffs oppose the National Association of Clean Water Agencies (NACWA)'s intervention motion. This case is about certain man-made, highly persistent toxic substances present in land-applied sewage sludge[1] that have migrated into food products at levels indisputably unsafe for human consumption, requiring farms in several states to permanently close. The Clean Water Act requires EPA to biennially review sewage sludge regulations to identify and regulate substances that, based on their toxicity, persistence, concentration, mobility, or potential for exposure, may be present in sewage sludge in concentrations which may adversely affect public health or the environment. EPA has not placed any limits on PFAS levels in sewage sludge, nor established any management practices for them. Plaintiffs seek an order compelling EPA to comply with its statutory duties to identify and regulate the substances at issue on a reasonable timeline.

The basis for NACWA's intervention arguments is that a ruling in Plaintiffs' favor would erase its ability to participate in EPA's rulemaking process, but this misrepresents the relief sought. NACWA and its members would not lack a single procedural protection of the notice-and-comment rulemaking process should this Court require EPA to identify and/or regulate some or all of the substances in Plaintiffs' complaint or require EPA to determine whether to do so. Indeed, district courts routinely require agencies to complete mandated statutory requirements (including rulemakings) without circumventing required public processes.

---

[1] Plaintiffs use the term "sewage sludge" because that is what Congress used in 33 U.S.C. § 1345 ("Disposal or Use of Sewage Sludge"). The word "biosolids" appears nowhere in the statute. National Association of "Clean Water" Agencies – which represents public wastewater and stormwater agencies – somewhat ironically objects to Plaintiffs' characterization of the term as a euphemism. *See* NACWA Br. at 2, n.2. A euphemism is "the substitution of an agreeable or inoffensive expression for one that may offend or suggest something unpleasant." *See* https://www.merriam-webster.com/dictionary/euphemism (last accessed Oct. 7, 2024).

To the extent that NACWA argues that it has an interest in ensuring that EPA alone may interpret statutory terms that define which substances require regulation in the first instance, the Supreme Court recently reminded us that it is courts, and not agencies, that have special competence in resolving statutory ambiguities. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2251 (2024). This Court may determine that EPA's incorrect interpretation of certain statutory terms make its failure to address particular substances in sewage sludge a violation of law, while still ensuring that when EPA *does* address those substances, it will comply with every public participation requirement, as well as exercise its discretion regarding the specific terms of its regulations.

NACWA also creatively imagines the ways in which an eventual potential *regulation* could impact its members' treatment of sewage sludge. However, a ruling in Plaintiffs favor would not modify sewage sludge regulations; it would merely require that EPA commence the rulemaking process. Because the Court would not determine the content of such a regulatory proposal, NACWA's alleged impacts are pure conjecture and cannot be said to be impaired by this lawsuit, as is necessary for as-of-right intervention.

Nor should NACWA be granted permissive intervention, which would not promote efficient adjudication. NACWA will contribute its perspective and expertise to the notice-and-comment rulemaking process that would remain fully intact should this Court rule in Plaintiffs' favor. It has not articulated a single argument or position that would differ from that of EPA in assessing the legal question presented – the scope of EPA's duty under the Clean Water Act.

## ARGUMENT

### I. NACWA IS NOT ENTITLED TO INTERVENE AS OF RIGHT

The four elements of Rule 24(a) (intervention as of right) are timeliness, interest, impairment of interest, and lack of adequacy of representation by the parties to the lawsuit. *Defs.*

*of Wildlife v. Perciasepe*, 714 F.3d 1317, 1322-23 (D.C. Cir. 2013). While the timeliness of NACWA's motion to intervene is questionable (filed over a month after EPA's answer was originally due and only *after* Plaintiffs had filed their brief opposing EPA's motion to dismiss), Plaintiffs do not specifically challenge this element of the intervention-as-of-right test, although its timing warrants the limitations Plaintiffs discuss *infra* at 12-13. NACWA does not meet the remaining three prongs of the test for intervention as of right, and its arguments depend on a mischaracterization of Plaintiffs' complaint and the relief sought.

**A. NACWA does not satisfy the "interest" prong of the as-of-right test for intervention.**

The requirement that a putative as-of-right intervenor show an interest in the litigation "is satisfied 'not [by] any interest the applicant can put forward, but only [by] a legally protectable one.'" *Ctr. for Food Safety v. United States EPA*, U.S. Dist. LEXIS 53395, *19 (D.D.C. 2024) (citing *Roane v. Gonzales*, 269 F.R.D. 1, 3 (D.D.C. 2010) (internal quotation marks and citation omitted)). *See also Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) ("the applicant must demonstrate a legally protected interest in the action") (citation omitted). A legally protectable interest must be "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." *United States v. Am. Tel. and Tel. Co.*, 642 F.2d 1285, 1291-92 (D.C. Cir. 1980).

NACWA's brief articulates two alleged interests: the integrity of the regulatory process and the potential that its members will be affected by "any changes in the regulatory landscape for biosolids." NACWA Br. (Doc 16-1) at 15. In reality, however, the first encompasses two legally distinct claims of interest: (1) that EPA have "the power to determine whether [particular] substances should be regulated in the first place," *id*. at 16, and (2) that NACWA members have the opportunity to participate in the notice-and-comment process for substances for which EPA

proposes regulations. Plaintiffs heartily agree that NACWA and its members – along with all members of the public – has an interest in being able to fully participate in the notice-and-comment rulemaking process for regulations of toxic pollutants in sewage sludge. As explained *infra* at 6-9, however, Plaintiffs' requested relief does not impact this interest. Plaintiffs also agree that NACWA members have an interest in any eventual changes to sewage sludge regulations, which is why they have both the right to participate in the notice-and-comment rulemaking process and the right to challenge any regulations that process ultimately produces. However, since the Court would not rule on the scope of any eventual regulations, NACWA's interest is wholly speculative and not imminent, and thus fails to satisfy the interest requirement of Rule 24(a) for intervention as of right.

That leaves NACWA's contention regarding what it calls "EPA's power to determine" what substances are to be regulated in the first place. NACWA seems to be arguing that it has been EPA's practice to offer "multiple forums of participation" even before the agency begins the rulemaking process and that NACWA has an interest in them. NACWA Br. at 16. These voluntary EPA practices are in no way mandated by statute and do not constitute a legally protectable interest that could support intervention as of right. NACWA has "not cited any persuasive authority for the proposition that [it is] entitled to participate when the EPA reviews its regulations to determine whether revisions may be necessary." *See Envtl. Integrity Project v. McCarthy*, 319 F.R.D. 8, 15 (D.D.C. 2016).

The law requires EPA to biennially review its sewage sludge regulations to identify and regulate "those toxic pollutants which, on the basis of available information on their toxicity, persistence, concentration, mobility, or potential for exposure, may be present in sewage sludge in concentrations which may adversely affect public health or the environment." 33 U.S.C.

§ 1345(d)(2)(C) (incorporating 33 U.S.C. § 1345(d)(2)(A)(i)). These are simply statutory criteria for what substances EPA "shall" regulate based on "available information"; there is no requirement that EPA consult industry groups. While NACWA vaguely complains that its members will be "depriv[ed]. . . of opportunities to present information to EPA in the normal course," NACWA Br. at 22, it does not explain how an order compelling EPA to do what the statute already requires it to do would implicate any legally protectable interest of its members.

NACWA also appears to contend that the outcome of this case could somehow impair EPA's authority to determine what substances to regulate by allowing the court to usurp that authority. This is not the case; the Court would simply be performing its traditional role of interpreting statutory requirements. More specifically, it would be determining whether EPA had met its duty in 33 U.S.C. § 1345(d)(2)(A)(i), which is explicitly incorporated by reference into the biennial review provision, § 1345(d)(2)(C).[2] Even if it were, however, NACWA would be a mere bystander to that dispute, and defending EPA's alleged authority would not be a legally protectable interest of NACWA's.

In short, while NAWCA's alleged interests in the ability to participate in the rulemaking process and its interest in the content of any future rules could be legally protectable interests in another context, they are not at issue in this case and could not be affected by its outcome as explained further below. NAWCA does not have a valid, legally protectable interest in EPA's alleged authority to determine which substances in sewage sludge should be regulated in the first instance.

---

[2] The Sixth Circuit has explained why EPA's compliance with 33 U.S.C. § 1345(d)(2)(A)(i) (requiring EPA to identify and regulate substances in sewage sludge when certain criteria are met) is properly reviewable in federal district court. *Armco, Inc. v. EPA,* 869 F.2d 975, 981-82 (6th Cir. 1989). *See* discussion in Pls' Mem. in Opp. to Defs' Mot. to Dismiss (Doc. 14) at 7-8.

**B. NACWA has not shown that the disposition of the action may as a practical matter impair or impede its ability to protect its alleged interests.**

In determining whether an applicant's interests will be impaired, courts have long looked to the *practical consequences* that the applicant may suffer if intervention is denied. *See Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977). An applicant seeking to intervene as of right must show that it is "so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interest." *Alternative Research & Dev. Found. v. Veneman*, 262 F.3d 406, 411 (D.C. Cir. 2001) (citing *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998)). The court denied intervention on this ground in *Alternative Research*, where a group promoting non-animal biomedical research methods criticized the U.S. Department of Agriculture for excluding birds, mice, and rats bred for research from the definition of "animal" in the Animal Welfare Act. *Id*. at 407. It petitioned the agency for a rulemaking to eliminate the exclusion and also filed a complaint in federal district court alleging that the exclusion violated the Act. *Id*. An organization that used animals in research sought to intervene, but in the meantime, USDA agreed to conduct a rulemaking and the parties stipulated to dismiss the lawsuit. *Id*. The putative intervenor appealed to the D.C. Circuit, which ruled that its "rights were not impaired by the initiation of a rulemaking." *Id*. at 411. "The Court went on to note that the would-be intervenor would "not be precluded from participating in the rulemaking and, if USDA decides to issue a final rule . . . not precluded from challenging that rule." *Id*.

This Court has denied intervention in circumstances highly similar to those of the instant case in a lawsuit brought under the citizen suit provision of the Resource Conservation and Recovery Act. Judge Bates summarized the situation thus:

> [Environmental group] Plaintiffs . . . are unimpressed by the EPA's current regulations and guidelines concerning the disposal, storage, transportation, and handling of oil and gas wastes. On the other hand, movants— [one state and several industry groups]—think the EPA's current approach is just fine. But this case is not about that dispute. Instead, this case deals with a different and narrower question: whether the EPA Administrator has violated non-discretionary, statutory duties to periodically review and, where necessary, revise those regulations and guidelines. Plaintiffs allege that the Administrator has violated those duties, and thus asks the Court to order the Administrator to perform them by a certain date. Fearing that such an order would result in burdensome new regulations, movants seek to intervene in this litigation pursuant to Federal Rule of Civil Procedure 24.

*Envtl. Integrity Project*, 319 F.R.D. 8, 10. Judge Bates concluded that neither as-of-right nor permissive intervention was warranted. Although his analysis of as-of-right intervention was based on basic principles of standing – a requirement no longer applicable for intervenors supporting defendants and not invoking a court's jurisdiction, *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019), his thoughtful logic applies to the impairment of interest prong of Rule 24(a). He went through several cases standing for the basic proposition that an order to conduct a rulemaking that did not dictate the outcome of that rulemaking did not constitute an appreciable interest, even though the outcome of the rulemaking could lead to regulations that the putative intervenor may not like. *See Envtl. Integrity Project,* 319 F.R.D. at 12-13 (discussing *Defenders of Wildlife v. Perciasepe*, 714 F.3d at 1321 and *In re Idaho Conservation League*, 811 F.3d 502, 506-514 (D.C. Cir. 2016)).[3]

---

[3] In *Environmental Integrity,* the remedy sought allowed for the possibility that EPA would determine not to propose any regulations at all, which is not the case here as Plaintiffs believe the statute requires identification and regulation when certain criteria are met. However, this difference does not distinguish that case, because the relief Plaintiffs seek would merely be a step towards regulation and would not dictate the *content* of the regulations. The mere possibility that regulations could later be issued that might adversely affect NACWA is not enough to justify intervention in a proceeding that would merely order the agency to list substances for regulation or propose regulations that NACWA would then have the opportunity to comment on or challenge when they are finalized.

NACWA argues that regulations on PFAS in land-applied sewage sludge will impair its interests because it assumes that such regulations will necessarily require NACWA members to landfill or incinerate the sludge instead. Besides being purely speculative with respect to the *content* of the regulations that EPA might propose in a notice-and-comment rulemaking, the impact of any future rules on NACWA members will be a function of EPA's application of the statutory criteria, which NACWA would be free to bring a lawsuit to challenge if it believes it has a basis to do so.

It should also be noted that NACWA's asserted interest is not one the statute is designed to protect. The statute is crystal clear: EPA must regulate toxic substances in sewage sludge when available information on their toxicity, persistence, concentration, mobility, or potential for exposure show that they may be present in sewage sludge in concentrations which may adversely affect public health or the environment. Congress knew it was creating a regulatory scheme for spreading sewage sludge *directly on America's farms and gardens*. It knew how to mandate the balancing of economic concerns into environmental statutes, but chose not to. Wastewater and stormwater agencies have long enjoyed the boon of cheap disposal of sewage sludge through land application, but the potential that they may have to adjust based on regulations that have yet to be conceived (let alone proposed for public comment) is simply insufficient to demonstrate that disposition of this action may, as a practical matter, impair or impede any legally protectable interest.

In short, even if this Court ordered a timeline within which EPA must identify or initiate a rulemaking proceeding for the PFAS list in the two tables of Plaintiffs' complaint, the outcome of the litigation will *not* bind or adversely impact NACWA in a concrete way nor, absent intervention, would NACWA lack recourse. It could comment on the proposed rulemaking and

challenge any final decision in court. Similarly, if this Court decided instead to order EPA to simply make a "yes or no" determination about *whether* to identify or regulate particular PFAS or chose to order EPA to prioritize the substances for regulation within a reasonable time frame, nothing in such a ruling would bind NACWA in any way or expose it to significant liability or injury. NACWA has not made the necessary showing that an adverse outcome of the subject litigation will prevent it from vindicating its rights.

**C. NACWA has failed to rebut the presumption of adequate representation by EPA.**

"Although an intervenor's burden of showing inadequacy of representation is minimal . . . a presumption of adequate representation exists if both the intervenor and existing party have the same ultimate objective." *Cobell v. Jewell*, 2016 U.S. Dist. LEXIS 199137, *9 (D.D.C. 2016) (internal citation omitted). *See* 6 FED. PRAC. 3 § 24.03. "Adequacy of representation must be assessed in relation to the specific purpose that intervention will serve." *American Tel. & Tel.*, 642 F.2d 1285, 1293.

NACWA has the same ultimate objective as EPA: a ruling denying Plaintiffs' requests this this Court declare that EPA failed to meet its duties under the Clean Water Act and to identify and regulate several hazardous pollutants in land-applied sewage sludge that are currently harming Americans. NACWA does not articulate any potential scenario in which its goals for the outcome of this litigation would conflict with EPA's except to state that "NACWA may have different views of the science, the risks, and the practical constraints of managing biosolids that inform how EPA should regulate biosolids," NACWA Br. at 21 – concerns which, of course, the notice-and-comment rulemaking process is designed to address.

Furthermore, in assessing adequacy of representation, "a court must consider whether the proposed intervenor itself has a right to pursue whatever it claims it is inadequately represented

in pursuing. If no such right exists, it cannot seriously be maintained that the proposed intervenor lacks adequate representation." *Smoke v. Norton*, 252 F.3d 468, 472 (D.C. Cir. 2001) (Henderson, K., concurring). As explained *supra* at 4-5, NACWA does not have any statutory right to participate in the determination of whether to list and regulate substances; rather, the statute itself establishes the criteria EPA must use. It cannot seriously be maintained that NACWA lacks adequate representation to pursue a "right" it does not possess.

## II. NACWA SHOULD NOT BE GRANTED PERMISSIVE INTERVENTION

Where, as here, a federal statute does not confer the right to intervene, Rule 24(b) gives the Court discretion to grant intervention only if the movant "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B). In deciding whether to grant permissive intervention, courts weigh three factors set out by Rule 24(b): (1) whether the motion to intervene is timely; (2) whether the applicant's claim shares a question of law or fact in common with the main action; and (3) whether intervention will unduly delay or prejudice adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b); *Sierra Club v. McCarthy*, 308 F.R.D. 9, 12 (D.D.C. 2015); *In re Vitamins Antitrust Litig.*, U.S. Dist. LEXIS 25068 (D.D.C. 2001). "District Courts have the discretion . . . to deny a motion for permissive intervention even if the movant established an independent jurisdictional basis, submitted a timely motion, and advanced a claim or defense that shares a common question with the main action." *EEOC v. National Children's Ctr.*, 146 F.3d 1042, 1048 (D.C. Cir. 1998); *see also Biden v. United States IRS*, U.S. Dist. LEXIS 175304, *37-38 (D.D.C. 2024) ("A court can deny a motion for permissive intervention—even if there is a common question of law of fact—if intervention would cause undue delay, complexity, or confusion in a case."). Courts also consider whether intervenors will significantly contribute to the just and equitable adjudication

of the legal questions presented. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 340 F.R.D. 1, 6 (D.D.C. 2021).

NACWA makes little effort to explain that what its "claim or defense" is, let alone elucidate how it shares a question of law or fact with the main action. This is the entirety of NACWA's argument in this regard, Br. at 22:

> NACWA's claims or defenses share a common question of law or fact with the main action. The questions arise from EPA's statutory duties under CWA Section 405(d) to identify and regulate pollutants and whether EPA's actions taken in the Biennial Report are sufficient to meet the statute's requirements. Like EPA, NACWA seeks to uphold the rightful procedural requirements to developing Part 503 regulations. *See Ass'n of O&C Counties. v. Trump*, No. CV 17-280, 2018 WL 11241964, at *1 (D.D.C. Jan. 22, 2018) (granting permissive intervention to non-profit organizations who shared similar defenses with defendant federal government's Monument designation).

In the case NACWA cites, the legally protected interest that the Plaintiff environmental groups identified was "preserving the [national] monument designation" that occurred in the last days of the Obama Administration from timber harvesters' challenge to that designation after the new administration took office. *Ass'n of O&C Counties v. Trump* at *5. The Court granted intervention in a single sentence, and did not specifically make a determination about shared defenses. *Id.* In contrast, in the instant case, there is no specific agency action being "defended," and as explained above, NACWA's interests in the notice-and-comment rulemaking process remain unaffected by the relief Plaintiffs seek. NACWA asserts no counterclaims, nor does it specify anything at all about this case that differentiates its position from that of EPA. NACWA "can best serve its stated interests by participating in the administrative review process" for any eventual regulations that EPA proposes and – should it disagree with them – by "fil[ing] its own suit to protect those interests directly." *Ctr. for Biological Diversity v. U. S. Fish & Wildlife Serv.*, 340 F.R.D. 1, 6-7 (D.D.C. 2021).

Moreover, there is no evidence that NACWA would significantly contribute to the just and equitable adjudication of the legal question presented – the scope of EPA's duty under the Clean Water Act. NACWA professes no particular expertise or informed viewpoint concerning the actual issue of statutory interpretation issue presented in the case. Allowing permissive intervention would complicate briefing, delay the case, and unduly prejudice Plaintiffs.

## III. SHOULD THIS COURT ALLOW INTERVENTION, IT SHOULD IMPOSE RESTRICTIONS TO PROMOTE EFFICIENCY AND MINIMIZE PREJUDICE.

This Court has the power to "impose appropriate conditions or restrictions" upon an intervenor's participation to minimize delay and prejudice to the existing parties. *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 20 (D.D.C. 2010). This is true even if intervention is as-of-right as opposed to permissive. *See, e.g., J.B. Stringfellow, Jr. v. Concerned Neighbors in Action*, 480 U.S. 370, 383 (1987) (Brennan, J., concurring) ("restrictions on participation may also be placed on an intervenor of right and on an original party"). As argued above, NACWA's intervention is unwarranted, but if granted, certain restrictions on its participation are wholly appropriate.

First, as this Court has observed, allowing a movant "to delay the case by waiting to file a motion to intervene until after a dispositive motion was filed . . . would unnecessarily force both the plaintiff and the defendant to reargue matters that were already briefed." *Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt.*, 205 F.R.D. 1, 7 (D.D.C. 2000) (limiting the applicant's participation to two arguments not made by the defendant). Here, Plaintiffs filed their complaint on June 6. NACWA waited to seek intervention until September 26, three days *after* Plaintiffs had responded to EPA's motion to dismiss. Plaintiffs' role in briefing its opposition to EPA's motion to dismiss is now complete, so accepting NACWA's proffered brief would prejudice

Plaintiffs either by adding briefing to which Plaintiffs have no opportunity to respond, or with additional briefing if they are permitted to respond, which would cause prejudice or delay that NACWA could have prevented had it not played fast and loose with the timing of its intervention motion. Therefore, Plaintiffs respectfully request that, if the Court grants NACWA intervenor status, it nonetheless disallow the filing of NACWA's Motion to Join Defendants' Motion to Dismiss.

Plaintiffs further request the following reasonable restrictions, which are in line with intervention restrictions that this Court recently imposed. *See, e.g.*, *Ctr. for Food Safety*, U.S. Dist. LEXIS 53395, *14 (D.D.C. 2024) (Kollar-Kotelly, C.).

• Require NACWA to meet and confer with EPA prior to the filing of any motion, responsive filing, or brief to determine whether its positions may be set forth in a consolidated fashion, with any separate filings by NACWA including a certificate of compliance with this requirement and a brief description of the need for separate filings.

• Require NACWA to refrain from repeating the same arguments as EPA in any separate filing, and confine its arguments to the existing claims in the action, without injecting new claims or straying into collateral issues; and

• Require any memoranda of points and authorities filed by NACWA regarding any motion in this action to not, without further leave of the Court and good cause shown, exceed twenty-five (25) pages, and ten (10) pages for any reply memoranda.

Such restrictions would ensure non-duplicative briefing while enabling NACWA to articulate any positions or interests is has that differ from those of Defendants.

**CONCLUSION**

For the reasons explained above, NACWA has failed to show that it entitled to intervene as of right in this matter, and should not be granted permissive intervention. If the Court does allow NACWA to intervene, it should impose the reasonable restrictions that Plaintiffs outline in above.

Respectfully submitted on October 9, 2024,

/s/ Laura Dumais
Laura Dumais, DC Bar # 1024007
Public Employees for Environmental Responsibility
962 Wayne Avenue, Suite 610
Silver Spring, MD 20910
(202) 265-7337 / ldumais@peer.org

/s/ Paula Dinerstein
Paula Dinerstein, D.C. Bar No. 333971
Public Employees for Environmental Responsibility
962 Wayne Ave, Suite 610
Silver Spring, MD 20910
(202) 265-7337 / pdinerstein@peer.org

*Counsel for Plaintiff*