UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES FARMER, *et al.*,

    *Plaintiffs*,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,

    *Defendants.*

No. 24-cv-1654 (DLF)

## MEMORANDUM OPINION

    Plaintiffs James Farmer; Robin Alessi; Patsy Schultz; Karen Coleman; Tony Coleman; Johnson County, Texas; Maine Organic Farmers and Gardeners Association; and Potomac Riverkeeper, Inc. ("Plaintiffs") bring this action against defendants the United States Environmental Protection Agency ("EPA") and EPA Administrator Michael S. Regan, alleging that EPA has failed to identify and regulate sewage sludge pollutants in violation of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.  Before the Court is the National Association of Clean Water Agencies' ("NACWA") motion to intervene as a defendant under Rule 24(a).[1]  Dkt. 20.  NACWA's motion is opposed by the plaintiffs, but not by EPA.  *See* Pls.' Opp'n, Dkt. 24.  For the reasons that follow, the Court will grant NACWA's motion.

---

[1] In the alternative, NACWA moves for permissive intervention under Rule 24(b).  Mot. to Int. at 21.  Because this Court will conclude that NACWA may intervene as of right under Rule 24(a), it will not consider whether NACWA meets the requirements to intervene permissively.  *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) ("Because we conclude that NRD is entitled to intervene as of right, we need not address the issue of permissive intervention.").

I.      BACKGROUND

   A.      Factual Background

Sewage sludge is "solid, semi-solid, or liquid residue generated during the treatment of domestic sewage in a treatment works."  40 C.F.R. § 503.9(w).  Section 405(d) of the CWA governs the regulation of sewage sludge.  Sections 405(d)(2)(A) and (B) require EPA to identify toxic pollutants which may be present in sewage sludge in concentrations that may adversely affect public health or the environment and to propose regulations specifying acceptable management practices and establishing numerical limitations for such pollutants.  33 U.S.C. § 1345(d)(2)(A)–(B).  Section 405(d)(2)(C) requires EPA to review "not less often than every 2 years . . . the regulations promulgated under this paragraph for the purpose of identifying additional toxic pollutants and promulgating regulations for such pollutants consistent with the requirements of this paragraph."  *Id*. § 1345(d)(2)(C).  EPA completed its most recent review of its sewage sludge regulations in December 2022.  *See* 2020–2021 EPA Biosolids Biennial Rep. No. 9.

Per- and polyfluoroalkyl substances ("PFAS") are a class of synthetic chemicals used in a variety of consumer products and industrial applications. *See* Mot. to Int. at 10.  Because of their durability, PFAS are found in trace amounts throughout the world ecosystem, including in sewage sludge. *Id.* "Public utilities are not designed to treat, remove, or destroy PFAS and have no readily available treatment options for the trace amounts of PFAS in the many millions of gallons of wastewater treated daily at a typical [publicly owned treatment work]." *Id.* Across its biennial reports, EPA has identified eleven PFAS as being present in sewage sludge.  Second Am. Compl., at ¶ 11, Dkt. 12.  EPA has, as of the date of this order, not promulgated any regulations of PFAS in sewage sludge, *see* 40 C.F.R. Part 503, but is conducting risk assessments for two PFAS, *see*

U.S. Env't Prot. Agency, PFAS Strategic Roadmap: EPA's Commitments to Action 2021–2024 at 16 (2021).

Plaintiffs comprise a group of farmers, the county in which they live and work, a nonprofit organization dedicated to promoting organic agriculture, and an organization representing members who reside throughout the Potomac River watershed. Second Am. Compl. at ¶¶ 21–38. Intervenor-applicant NACWA is a national nonprofit organization that represents the interests of over 350 public clean water agencies responsible for the treatment of wastewater and stormwater, including sewage sludge, in accordance with EPA's regulations. Mot. to Int. at 1–4.

**B.    Procedural Background**

The plaintiffs allege that EPA has failed to (1) identify a set of eighteen PFAS as present in sewage sludge in its most recent biennial report contrary to available information and (2) regulate a set of eleven PFAS identified as present in sewage sludge in EPA's various biennial reports in violation of EPA's non-discretionary duties under the CWA. Second Am. Compl. ¶¶ 3–4 (citing 33 U.S.C. § 1354(d)); *see id.* ¶¶ 10–11. They further allege that each of these failures constitute an arbitrary and capricious action and an agency action unlawfully withheld or unreasonably delayed under the APA. *Id.* ¶ 4 (citing 5 U.S.C. § 706(1)–(2)(A)). The plaintiffs seek, among other relief, an order directing EPA to regulate the eleven PFAS that EPA has identified as present in sewage sludge. *Id.* at 31. On September 26, 2024, following the filing of the plaintiffs' second amended complaint, Dkt. 12, and EPA's motion to dismiss, Dkt. 13, NACWA filed the instant motion to intervene, Dkt. 20.

3

## II.   LEGAL STANDARDS

Rule 24 of the Federal Rules of Civil Procedure "outlines two different avenues by which a court can allow an outsider to intervene—intervention of right, and permissive intervention." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1044 (D.C. Cir. 1998). Rule 24(a) provides for intervention of right when a movant can demonstrate four requirements: "1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest." *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015) (citing Fed. R. Civ. P. 24(a)). Independently, under this circuit's caselaw, "to intervene under Rule 24(a), the movant must demonstrate that it has standing under Article III of the U.S. Constitution." *Yocha Dehe v. United States Dep't of the Interior*, 3 F.4th 427, 430 (D.C. Cir. 2021).[2] "Courts are to take all well-pleaded, nonconclusory allegations in the motion

---

[2] In *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433 (2017), the Supreme Court pronounced that "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." 581 U.S. at 440; *see also Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) (intervenor-defendant need not demonstrate standing so long as it is not "invoking a court's jurisdiction"); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n. 6 (2020) (intervenor-defendant did not need to demonstrate standing when it sought the same relief as the defendant-appellant). Even so, subsequent D.C. Circuit precedent requires intervenors of right to demonstrate Article III standing regardless of whether they invoke the court's jurisdiction or seek relief different from that sought by the original parties. *See Yocha Dehe*, 3 F.4th at 430–32 (D.C. Cir. 2021). Consequently, some judges in this district have continued to require all intervenors of right to demonstrate Article III standing, while others have not. *Compare, e.g.*, *Signal Peak Energy, LLC v. Haaland*, No. 24-cv-366 (TSC), 2024 WL 3887386, at *3–4 (D.D.C. Aug. 21, 2024) (noting the tension between *Yocha Dehe* and *Little Sisters* but concluding that the court is bound by circuit precedent to require all intervenors of right to demonstrate Article III standing) *with Env't Integrity Project v. Wheeler*, No. 20-cv-1734 (KBJ), 2021 WL 6844257, at *2 (D.D.C. Jan. 27, 2021) (Jackson, J.) (defendant-intervenors not invoking the court's jurisdiction are not required to demonstrate standing) *and Childs.' Health Def. v. CDC*, No. 23-cv-431 (TNM), 2024 WL 3521593, at *5 n.3 (D.D.C. July 24, 2024) (same). This Court need not decide this issue because NACWA has associational Article III standing.

4

to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 9 (D.D.C. 2010) (quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2020)).

## III.   ANALYSIS

### A.   Standing

An organization has standing to bring suit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wa. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). An organization's members have standing to sue in their own right when they can demonstrate that they would suffer an "injury in fact" that is "(a) concrete and particularized" and "(b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). They must also establish that there is "a causal connection between the injury and the conduct complained of" and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (cleaned up).

NACWA has demonstrated that its members would have standing to sue in their own right. Presently, EPA does not regulate PFAS in sewage sludge. Mot. to Int. at 12. Should the plaintiffs' suit prove successful, however, EPA would be required to promulgate new regulations concerning PFAS in sewage sludge. That, in turn, would entail "the imposition of new numerical limitations, management practice, and/or operational standards which have associated costs" for NACWA's members. NACWA Reply, at 6, Dkt. 25; *see also* Mot. to Int. at 17 ("The regulation of any new

substance (let alone multiple substances) under Part 503 will change NACWA members' management of biosolids.  Imposing pollutant limits for PFAS under Part 503 will alter NACWA members' existing disposal options, entail sampling and monitoring costs, and potentially require costly operational changes."); 33 U.S.C. § 1345(d)(2)(A)(i) ("[T]he Administrator shall . . . propose regulations specifying acceptable management practices for sewage sludge containing each such toxic pollutant and establishing numerical limitations for each such pollutant."). Because the successful disposition of the plaintiffs' suit would necessarily result in the promulgation of new regulations with associated economic harms to NACWA's members, NACWA has sufficiently alleged an injury fairly traceable to the plaintiffs' requested relief and redressable by a judicial decision denying such relief.  *See County of San Miguel. v. MacDonald*, 244 F.R.D. 36, 44–45 (D.D.C. 2007) (finding that intervenor-applicants had standing to intervene when plaintiffs sought issuance of an emergency rule listing a bird species as endangered because such rule would lead to greater regulation of intervenor-applicants' members' land with associated financial costs); *cf. Fund for Animals,* 322 F.3d at 733–74  (holding that when a party or a party's property is the direct object of an agency action, standing is self-evident).

The plaintiffs argue that any injury resulting from such regulations is too speculative to support Article III standing because they do not request that the Court specify the content of any new regulations.[3]  *See* Pls.' Opp'n at 6–9, 7 n.3.  But the cases that the plaintiffs cite are readily

---

[3] The Court notes that the plaintiffs did not brief the issue of standing because they take the position that intervenor-defendants that do not invoke a court's jurisdiction need not demonstrate it.  *See* Pls.' Opp'n at 7.  Rather, the plaintiffs raise this argument in the context of Rule 24's interest prongs.  *See id.* at 5–7.  However, "[c]ourts in this circuit generally treat the standing analysis for intervention as of right as equivalent to determining whether the intervenor has a 'legally protected' interest under Rule 24(a)." *Biden v. IRS*, No. 23-cv-2711 (RC), 2024 WL 4332072, at *10 n.8 (D.D.C. Sep. 27, 2024); *see Crossroads*, 788 F.3d at 320 ("[S]ince Crossroads has constitutional standing, it *a fortiori* has an interest relating to the property or transaction which is

6

distinguishable. In *Environmental Integrity Project*, the court found that intervenor-applicants lacked standing to challenge a consent decree that required EPA "to initiate a rulemaking and to issue whatever regulations that it, in its discretion, deems necessary" because the consent decree "would not in any way dictate the rule's content, nor prevent the EPA from declining to promulgate a new rule at all." 319 F.R.D. at 13–14. In those circumstances, injury was too speculative because the consent decree gave EPA discretion not to promulgate any regulations at all. *See id*; *see also Defs. of Wildlife*, 714 F.3d at 1324 ("Significantly, the consent decree does not *require* EPA to promulgate a new, stricter rule. Instead, it merely requires that EPA conduct a rulemaking and then decide whether to promulgate a new rule—the content of which is not in any way dictated by the consent decree—using a specific timeline." (emphasis in original)); *Idaho Conservation League*, 811 F.3d at 514 (same). Here, in contrast, the plaintiffs request the Court to order EPA to regulate certain PFAS in sewage sludge. *See* Second Am. Compl. at 31; Pls.' Opp'n at 7 n.3. If the Court were to grant the requested relief, EPA would be required to promulgate regulations. That EPA would retain discretion as to the substance of any new rule is irrelevant because any regulation of a new substance in sewage sludge would necessarily impose costs on NACWA's members because they would have to alter the way they presently manage sewage sludge. *See* Mot. to Int. at 17. NACWA's members thus have Article III standing to intervene in their own right.

---

the subject of the action." (cleaned up)); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) ("With respect to intervention as of right in the district court, the matter of standing may be purely academic… [A]ny person who satisfies Rule 24(a) will also meet Article III's standing requirement."). To support their argument, the plaintiffs also rely primarily on cases discussing standing. *See* Pls.' Opp'n at 7 (citing *Env't Integrity Project v. McCarthy*, 319 F.R.D. 8, 10 (D.D.C. 2016)); *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324–25 (D.C. Cir. 2013); *In re Idaho Conservation League*, 811 F.3d 502, 506–14 (D.C. Cir. 2016)). Accordingly, the Court considers the plaintiffs' arguments in its standing analysis.

The other two requirements of associational standing are easily met here. NACWA "is a national non-profit trade association representing the interests of over 350 public clean water agencies managing wastewater and stormwater across the country," Mot. to Int. at 1, and the organization regularly solicits its members' views on the matter of PFAS in sewage sludge and conveys those views to EPA as it considers potential regulations, *see* Decl. of Adam Krantz, at 4, Dkt. 20-3. Protecting the interests of NACWA's members in avoiding undue adverse regulations is clearly germane to NACWA's organizational purpose. And because this litigation concerns EPA's compliance with the requirements of the CWA, and not any individualized grievances, participation by NACWA's members is unnecessary. *See Int'l Dark-Sky Assoc. v. FCC*, 106 F.4th 1206, 1218 (D.C. Cir. 2024). Accordingly, NACWA has demonstrated that it has associational standing to intervene in this action.

### B. Intervention of Right

Turning to the intervention requirements under Rule 24(a), the Court concludes each is met here. The plaintiffs do not challenge the timeliness of the motion to intervene. *See* Pls.' Opp'n at 3. And because the motion was filed before this Court issued any merits decision, intervention would not unduly disrupt this litigation. *See Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) ("[T]he requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties."); *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 6 (D.D.C. 2018) (finding a motion to intervene to be timely when it was filed in advance of the court issuing any merits decisions). Further, because NACWA possesses Article III standing, it necessarily has a legally protected interest in this litigation. *See Crossroads*, 788 F.3d at 320; *Fund for Animals*, 322 F.3d at 735.

Disposition of this action also may impair NACWA's ability to protect its interest in avoiding undue adverse regulations. In assessing whether a movant's interests may be impaired by the outcome of a lawsuit, courts look to the "practical consequences of denying intervention, even where the possibility of future challenge to the regulation remain[s] available." *Fund for Animals*, 322 F.3d at 735 (cleaned up). "[D]isposing of [an] action may as a practical matter impair or impede a proposed intervenor's interests when the disposition of the action would result in a substantial change in the status quo with respect to those interests." *District of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 234 (D.D.C. 2011) (cleaned up). As discussed *supra*, EPA does not presently regulate PFAS in sewage sludge. Importantly, both EPA and NACWA maintain that the determination of whether PFAS are toxic substances that must be regulated under statute is a matter for the agency's discretion. *See* EPA Mot. to Dismiss, at 7, Dkt. 13; NACWA Mot. to Join, at 3, Dkt. 20-5. A ruling granting the plaintiffs' requested relief would deny EPA that discretion by requiring it to identify and regulate certain PFAS as toxic substances under the CWA. *See* Second Am. Compl. at 31. That would plainly constitute a change to the status quo because it would render the prospect of new regulations on sewage sludge—and the associated economic costs to NACWA's members—unavoidable. *See Env't Integrity Project*, 2021 WL 6844257, at *3; *County of San Miguel*, 244 F.R.D. at 47. Even if NACWA could later challenge such regulations in a separate litigation, "there is no question that the task of reestablishing the status quo if the [plaintiffs] succeed[] in this case will be difficult and burdensome." *Fund for Animals*, 322 F.3d at 735. NACWA has demonstrated that the disposition of this lawsuit may, as a practical matter, impair its ability to protect its interests.

Finally, EPA may not adequately represent NACWA's interests in this litigation. To satisfy the adequacy-of-representation requirement, a movant need only show "that representation

9

of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (describing the adequacy-of-representation requirement as "not onerous").  The D.C. Circuit has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736 & n.9 (collecting cases).  That is because "government entities are usually charged with 'represent[ing] the interests of the American people,' whereas aspiring intervenors, like the intervenor-applicants here, are dedicated to representing their personal interests or the interests of their members or members' businesses." *County of San Miguel*, 244 F.R.D. at 48 (quoting *Fund for Animals*, 322 F.3d at 736).  NACWA points out that it "has both operational and financial interests that EPA does not share.  NACWA members remain directly responsible for processing, treating, and otherwise managing PFAS in biosolids, whereas EPA does not." NACWA Reply at 8.  While EPA and NACWA may be generally aligned in seeking dismissal of the plaintiffs' suit, "the tactical similarity of the present legal contentions of the parties does not assure adequacy of representation or necessarily preclude the intervenor from the opportunity to appear in its own behalf." *Fund for Animals*, 322 F.3d at 737 (quoting *Nuesse v. Camp*, 385 F.2d 694, 703 (D.C. Cir. 1967)) (cleaned up).  Because NACWA seeks to vindicate its members' narrow financial interests—as opposed to the general public interest that EPA is tasked with representing—it meets the adequacy-of-representation requirement.  *Id.* at 736–37; *Env't Integrity Project*, 2021 WL 6844257, at *3.

    Accordingly, NACWA is entitled to intervene in this suit as of right under Rule 24(a).  *See* Fed. R. Civ. P. 24(a).

### C. Restrictions on Intervention

"Even where the Court concludes that intervention as a matter of right is appropriate, its inquiry is not necessarily at an end: district courts may impose appropriate conditions or restrictions upon the intervenor's participation in the action." *Forest Cnty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 15 (D.D.C. 2016) (citing *Fund for Animals*, 322 F.3d at 737 n.11). "[T]he primary limitation on the district court's discretion is that any conditions imposed should be designed to ensure the fair, efficacious, and prompt resolution of the litigation." *Wildearth Guardians*, 272 F.R.D. at 20.

The plaintiffs seek various restrictions on NACWA's intervention, including not allowing it to file a motion to join EPA's motion to dismiss. *See* Pls.' Opp'n at 13. While the Court recognizes the plaintiffs' concerns regarding additional briefing, NACWA's motion to join raises no new arguments. *See* NACWA Mot. to Join. Thus, the Court will allow NACWA to file its motion and permit the plaintiffs to respond. The Court will also require NACWA (1) to continue confining its arguments to the existing claims in the action and refrain from raising new claims or collateral issues; and (2) to meet and confer with EPA prior to the filing of any motion, responsive filing, or brief to determine whether its positions may be set forth in a consolidated fashion, with any separate filings by NACWA including a certificate of compliance with this requirement and a brief description of the need for separate filings. *See Ctr. for Food Safety v. EPA*, No. 23-cv-1633 (CKK), 2024 WL 1299338, at *5 (D.D.C. Mar. 26, 2024). The Court will address any additional concerns, including requests to modify the page limitations on filings in LCvR 7(e), if they arise during this litigation.

## CONCLUSION

For the foregoing reasons, the Court will grant NACWA's Motion to Intervene, Dkt. 20.

A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

December 16, 2024