UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES FARMER, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*, *Defendants*. | CIVIL ACTION NO. 24-cv-1654 (DLF) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO NATIONAL ASSOCIATION OF CLEAN WATER AGENCIES' MOTION TO JOIN DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

NACWA's argument on the question of nondiscretionary duty (relevant to EPA's Rule 12(b)(1) motion to dismiss for alleged lack of jurisdiction) boils down to this: no matter how much evidence a plaintiff possesses that a substance is present in biosolids at concentrations that harm human health and the environment, EPA can never be sued in federal court under the Clean Water Act because the Act's biennial review clause does not explicitly name any particular substance. This flies in the face of the provision's purpose, its plain language, and the statutory structure. Congress included the biennial review to protect the public from threats in sewage sludge *as-yet-unknown* at the time of drafting. Like a testator providing for grandchildren that may be born after execution of the will, Congress necessarily lacked the ability to explicitly list these substances. But contrary to NACWA's claims, the biennial review provision does not give EPA unfettered discretion as to what hazardous substances to regulate in sewage sludge. Rather, it incorporates by reference the criteria set out in Section 405(d)(2)(A), which NACWA, as well as EPA, admits are nondiscretionary. NACWA's contention that those requirements are divorced

1

from the biennial review provision, freeing EPA from the boundaries Congress imposed on the initial round of identification and regulation of toxic substances in sewage sludge, is untenable.

Regarding Plaintiffs' alternative claim under the Administrative Procedure Act for arbitrary and capricious action, the only argument NACWA makes distinct from those of EPA concerns opportunities for stakeholder input. As nothing this Court could do in a ruling would circumvent any legally required opportunities for stakeholder input, NACWA's argument fails.

## ARGUMENT

### A. NACWA's argument that Section 405(d)(2)(A) is irrelevant fails; because the biennial review provision incorporates Section 405(d)(2)(A)'s requirements, EPA has a nondiscretionary duty to regulate substances that meet the given criteria.

As it must, NACWA agrees with EPA that Section 405(d)(2)(A)[1] is nondiscretionary. NACWA Br. on Mot. to Dismiss (hereinafter "NACWA Br.") at 4; EPA Mem. on Mot. to Dismiss at 2; EPA reply on Mot. to Dismiss at 3. Plaintiffs need not repeat their explanation of how Section 405(d)(2)(C) (the biennial review provision) explicitly incorporates all the requirements of Section 405(d)(2), including those in Section 405(d)(2)(A). *See* Pls' Resp. to EPA Mot. to Dismiss at 7-12. Suffice it to say that Plaintiffs' position is that Congress quite reasonably compelled EPA, in future reviews, to use the same criteria for identifying and regulating toxic substances in biosolids as Congress had imposed for the first round of regulations.

---

[1] Section 405(d)(2)(A)(i) uses "shall" to require EPA, in its initial round of regulations, to:

> identify those toxic pollutants which, on the basis of available information on their toxicity, persistence, concentration, mobility, or potential for exposure, may be present in sewage sludge in concentrations which may adversely affect public health or the environment, and propose regulations specifying acceptable management practices for sewage sludge containing each such toxic pollutant and establishing numerical limitations for each such pollutant for each use identified under paragraph (1)(A).

33 U.S.C. § 1345(d)(2)(A)(i).

NACWA argues that the requirements of Section 405(d)(2)(A) are "not at issue" here at all. NACWA Br. at 4. NACWA contends that the words "consistent with the requirements of this *paragraph*" in the biennial review position do not refer to Section 405(d)(2), but rather to Section 405(d) overall and in particular Section 405(d)(1), which is far broader. *Id*. at 5-6, n 4. It so reasons because of the use of "paragraph" rather than "subparagraph." *Id*. This is incorrect. "Congress 'ordinarily adheres to a hierarchical scheme in subdividing statutory sections,' which scheme uses, successively, "subsections" (e.g., "(a)"), "paragraphs" (e.g., "(1)"), subparagraphs (e.g., "(A)") and "clauses" (e.g., "(i)")." *United States v. Hines*, 694 F.3d 112, 118 (D.C. Cir. 2012) (citing *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60-61 (2004)). Thus, "consistent with the requirements of this paragraph" should be interpreted as referring to Section 405(d)(2), which include requirements in its subparagraphs (A); (B) (which essentially repeats those in (A)); and (D).

Nothing in the statute suggests otherwise. Even a cursory look at the organization of the relevant section (33 U.S.C. § 1345, "Disposal or use of sewage sludge") reveals the flaw of NACWA's argument. The words "requirements of this paragraph" in the biennial review provision, Section 405(d)(2)(C) are most logically interpreted as referring to the paragraph is which it is housed: Section 405(d)(2), entitled "Identification and Regulation of Toxic Pollutants." After all, the biennial review provision is aimed at EPA's *identification and regulation of toxic pollutants*. The requirements in subparagraphs (A), (B), and (D) of Section 405(d)(2) are specific to the identification and regulations of toxic pollutants in biosolids and are far more detailed than any requirements in the broader Section 405(d)(1).

Nor can it be, as NACWA argues, that because Section 405(d)(2)(A) contains deadlines now past, it is not "future looking" and thus has no further import. NACWA Br. at 5-6, n 4.

3

Congress knew that Section 405(d)(2)(A) contained deadlines that would pass, yet it explicitly incorporated its other requirements into the biennial review provision by reference. NACWA and EPA claim that the only time requirement relating to biennial review is the two-year deadline itself, but they fail to acknowledge that the incorporation of Section 405(d)(2) could be interpreted to require EPA, when available evidence shows that a substance may be present in sewage sludge in concentrations that may harm human health and the environment, to promulgate regulations consistent with the time frames Congress imposed in the initial rounds.[2]

### B. A ruling in Plaintiffs' favor would not remove any legally required opportunities for public input, and NACWA's argument does not support dismissing Plaintiffs' Administrative Procedure Act claim.

NACWA's argument regarding Plaintiffs' alternative cause of action under the Administrative Procedure Act (for acting arbitrarily and capriciously in failing to identify substances for regulation for which ample evidence exists to do so) repeats EPA's arguments alleging that there is no final agency action. Plaintiffs refer the Court to their prior briefing for their response. *See* Pls.' Resp. to EPA Mot. to Dismiss at 16-20.

The only argument NACWA independently raises in this section of its brief is the allegation that if this Court were to order EPA to promulgate regulations, stakeholders like NACWA would be cut out of the process. This is patently false. While of course a *rulemaking proposal* requires public input, the decision of *whether* to regulate a substance in the first instance does not. Plaintiffs already discussed this distinction. *See* Pls. Resp. to NACWA Mot. to Intervene at 4-5. The only provision NACWA points to, Section 405(d)(1), *see* NACWA Br. at 7, requires public participation in the process of developing and publishing regulations, which

---

[2] *See* Section 405(d)(2)(A)(ii) (requiring EPA to promulgate regulations within nine months of identifying substances for regulation) and Section 405(d)(2)(B)(ii) (requiring EPA to promulgate regulations within ten and a half months of identifying substances for regulation).

necessarily occurs after EPA has identified a substance for regulation. Plaintiffs do not disagree that EPA often *does* seek stakeholder input on decisions whether to regulate, including through its risk assessment process, but such opportunity for input is not required by law. A decision by this Court that statutory criteria requiring regulation are met would leave EPA to craft the regulations utilizing its scientific expertise and usual public processes for proposed rulemakings.

Finally, with respect to EPA's flow chart, NACWA's statement is false that a substance "must" undergo "preliminary risk screening and a risk assessment *before* EPA considers regulation." NACWA Br. at 7-8. This is the process that EPA has developed over the years, but no law compels these steps. It is the province of the Courts to apply the plain language of statutes and resolve any statutory ambiguities. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2251 (2024). If the Court interprets the law to require EPA to regulate substances that meet certain criteria, and also finds – by taking evidence, just as Courts regularly do even in scientifically complex cases – that these criteria are met, requiring regulation is simply a matter of enforcing the law. EPA remains free to conduct risk assessments or use any other processes it finds useful in determining the contours of those regulations, and will do so with full opportunities for public participation.

## CONCLUSION

Under either Rule 12(b)(1) or 12(b)(6), the Court "assume[s] the truth of all material factual allegations," *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up), and asks whether those allegations, if true, permit a suit to be maintained. At this preliminary stage, the question is simply whether the biennial review provision imposes upon EPA a non-discretionary duty to identify and regulate a substance when available information shows that it may be present in biosolids in concentrations that may pose a risk to human health

and the environment. If the answer is yes, and if Plaintiffs have made factual allegations sufficient to plead their cause of action, there is no basis for dismissing this case before it reaches the merits. It is only at the merits stage of the litigation that this Court would take evidence and make decisions regarding particular substances EPA should regulate.

NACWA accuses plaintiffs of basing their pleading on "inflammatory allegations regarding risks from PFAS." NACWA Br. at 3. The testing results that Plaintiffs will present if this matter proceeds to the merits are, indeed, shocking due to the magnitude of the PFAS levels found in the necropsied animals after the land application of biosolids, but this does not make them "inflammatory," nor can reputable scientific studies outlining the harms from PFAS be so described. Test results and scientific studies are simply "available information," which is precisely what the statute, in Section 405(d)(2)(A)(i), requires EPA to consider. The allegations in Plaintiffs' complaint allow the suit to be maintained as they suggest that PFAS not only "may be" but unequivocally *are* present in concentrations that not only "may" but *do* pose a harm to human health and the environment. That is precisely the criteria that Congress set out triggering EPA's mandatory duty to regulate.

EPA's motion to dismiss under Rule 12(b)(1) fails because there *is* a nondiscretionary duty the breach of which Plaintiffs allege with enough specificity to survive a motion to dismiss, and EPA's Rule 12(b)(6) motion fails because Plaintiffs have stated a claim upon which relief can be granted. Nothing in NACWA's motion supports any other conclusion.

Respectfully submitted on January 13, 2025,

/s/ Laura Dumais
Laura Dumais, DC Bar No. 1024007
Public Employees for Environmental Responsibility
962 Wayne Avenue, Suite 610

6

Silver Spring, MD 20910
(202) 265-7337 / ldumais@peer.org

/s/ Paula Dinerstein
Paula Dinerstein, D.C. Bar No. 333971
Public Employees for Environmental Responsibility
962 Wayne Ave, Suite 610
Silver Spring, MD 20910
(202) 265-7337 / pdinerstein@peer.org

*Counsel for Plaintiff*