UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES FARMER, *et al.*,

    *Plaintiffs*,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,

    *Defendants*.

No. 24-cv-1654 (DLF)

**MEMORANDUM OPINION AND ORDER**

    James Farmer; Robin Alessi; Patsy Shultz; Karen Coleman; Tony Coleman; Potomac Riverkeeper, Inc.; Johnson County, Texas; and the Maine Organic Farmers and Gardeners Association bring this action against the Environmental Protection Agency (EPA), its administrator, and intervenor-defendant National Association of Clean Water Agencies (NACWA). *See* Sec. Am. Compl., Dkt. 12; Order, Dkt. 28. The plaintiffs seek to compel agency action regarding the regulation of sewage sludge under the Clean Water Act (CWA), 33 U.S.C. §§ 1251 *et seq.*, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706. Before the Court is the federal defendants' Motion to Dismiss, EPA Mot., Dkt. 13, as joined by NACWA, NACWA Mot., Dkt. 33. For the reasons that follow, the Court will grant the motion.

**I.     BACKGROUND**

    Sewage sludge is "solid, semi-solid, or liquid residue generated during the treatment of domestic sewage in a treatment works." 40 C.F.R. § 503.9(w). Section 405(d) of the CWA governs the regulation of sewage sludge. 33 U.S.C. § 1345(d). Sections 405(d)(2)(A) and (B) set deadlines in 1986 and 1987 for EPA to "identify those toxic pollutants which . . . may be present

in sewage sludge in concentrations which may adversely affect public health or the environment" and then propose and promulgate "regulations specifying acceptable management practices for sewage sludge containing each such toxic pollutant and establishing numerical limitations for each such pollutant." *Id.* § 1345(d)(2)(A)(i); *see also id.* § 1345(d)(2)(B)(i) (setting 1987 and 1988 deadlines for identifying and regulating other toxic pollutants). Section 405(d)(2)(C) further provides that, "[f]rom time to time, but not less often than every 2 years, the Administrator [of EPA] shall review the regulations promulgated under this paragraph for the purpose of identifying additional toxic pollutants and promulgating regulations for such pollutants consistent with the requirements of this paragraph." *Id.* § 1345(d)(2)(C). EPA published its most recent review of its sewage-sludge regulations in December 2022. *See* EPA, Biennial Report No. 9 (Reporting Period 2020–2021), December 2022, https://perma.cc/R455-TG7R (Biennial Report No. 9).

Per- and polyfluoroalkyl substances (PFAS) are a class of chemicals used in a variety of consumer products and industrial applications. Sec. Am. Compl. ¶¶ 1, 7. Because of their durability, PFAS are "bio-accumulative" and "bio-magnifying" such that they can contaminate sewage sludge, which can pollute land when used as fertilizer. *Id.* ¶¶ 1, 7 & n.1, 8. Although EPA's biennial reports have listed eleven PFAS as being present in sewage sludge, *id.* ¶ 11, the agency has not promulgated any corresponding regulations, *id.* ¶ 84.

The plaintiffs comprise a group of farmers, the county in which they live and work, a nonprofit organization dedicated to promoting organic agriculture, and an organization representing residents throughout the Potomac River watershed. *Id.* ¶¶ 21–38. They filed the operative complaint in August 2024, seeking an order directing EPA (1) to identify certain PFAS in its next biennial report and (2) to regulate certain other PFAS pursuant to deadlines set by this

2

Court.  Sec. Am. Compl. at 31.  The federal defendants now move to dismiss the operative complaint for lack of subject-matter jurisdiction and for failure to state a claim.  EPA Mot.

## II.    LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Federal law empowers federal district court judges to hear only certain kinds of cases, and the plaintiff bears the burden of establishing that his case falls within that limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  When deciding a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine jurisdictional questions."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation modified).  A court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" to "assure itself of its own subject matter jurisdiction."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (citation modified).  A court that lacks jurisdiction must dismiss the action.  Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Rule 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the Court construes the

3

complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation modified).  But the Court need not accept "a legal conclusion couched as a factual allegation" nor an inference unsupported by the facts alleged in the pleadings.  *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**III.   ANALYSIS**

Under the CWA, the plaintiffs allege that EPA failed to (1) identify a set of eighteen PFAS (Table 1 PFAS) as present in sewage sludge and (2) regulate a set of eleven PFAS (Table 2 PFAS) listed in its earlier biennial reports.  Sec. Am. Compl. ¶¶ 3, 10–11; *see* 33 U.S.C. §§ 1365(a)(2), 1345(d).  Under the APA, the plaintiffs further allege that the agency's failure to include the Table 1 PFAS in its latest Biennial Report constitutes an arbitrary and capricious action, Sec. Am. Compl. ¶ 4; *see* 5 U.S.C. § 706(2)(A), and that EPA's failure to regulate certain PFAS constitutes an unlawfully withheld or unreasonably delayed action, Sec. Am. Compl. ¶ 4; *see* 5 U.S.C. § 706(1).

The Court will grant the defendants' motion to dismiss.  Although the plain language of the CWA imposes a non-discretionary duty on EPA to *review* its regulations on a biennial basis, it does not mandate that EPA also *identify and regulate* sewage-sludge pollutants within the same time frame.  And neither the Biennial Report nor EPA's failure to list pollutants in that report constitutes a final agency action subject to APA review.

This is not to say, however, that an interested party cannot initiate legal action against EPA for failing to identify or regulate PFAS.  To the contrary, an interested party can petition EPA to initiate a rulemaking to identify or regulate any pollutant.  See 5 U.S.C. § 553(e).  And EPA's denial of any such petition could constitute a final agency action subject to APA review.

A.    **CWA Claims**

The CWA's citizen-suit provision contains a conditional waiver of sovereign immunity, without which the court lacks subject-matter jurisdiction. *See Sierra Club v. Wheeler*, 956 F.3d 612, 618 (D.C. Cir. 2020). That provision waives sovereign immunity for citizens suits arising from EPA's "failure . . . to perform any act or duty under [the CWA] which is not discretionary." 33 U.S.C. § 1365(a)(2). A duty is non-discretionary if it "categorically mandate[s] that *all* specified action be taken by a date-certain deadline." *Sierra Club v. Thomas*, 828 F.2d 783, 790–91 (D.C. Cir. 1987) (citation modified); *see Alaska Cmty. Action on Toxics v. EPA*, 943 F. Supp. 2d 96 (D.D.C. 2013).[1] "[A] nondiscretionary duty of timeliness may arise even if a deadline is not explicitly set forth in the statute, if it is readily-ascertainable by reference to some other fixed date or event." *Thomas*, 828 F.2d at 790.

The plaintiffs assert that Section 405(d)(2)(C) imposes a non-discretionary biennial duty to identify and regulate sewage-sludge pollutants that "'may adversely affect public health or the environment.'" *See* Pls.' Opp'n at 8–9, Dkt. 14 (quoting 33 U.S.C. § 1345(d)(2)(A)(i)). According to the plaintiffs, EPA has shirked its non-discretionary duties under the CWA by failing to identify or regulate certain toxic PFAS since its latest biennial review. *Id.* at 12, 15. The Court disagrees. Even assuming that Section 402(d)(2)(C) requires EPA to identify and to regulate additional sewage-sludge pollutants at some point, it does not specify a "date-certain deadline" by which the agency must do so.

The Court begins with the plain text of the statute. *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016). Section 405(d)(2)(C) provides that, "[f]rom time to time, but

---

[1] "[A] failure to perform claim requires a date-certain deadline, while [a claim for] unreasonable delay does not." *Zook v. McCarthy*, 52 F. Supp. 3d 69, 73 (D.D.C. 2014) (citation modified).

5

not less often than every 2 years, the Administrator shall review the regulations promulgated under this paragraph for the purpose of identifying additional toxic pollutants and promulgating regulations for such pollutants." 33 U.S.C. § 1345(d)(2)(C).  It is well-established that the "word 'shall' generally imposes a nondiscretionary duty." *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 362 (2018); *Bennett v. Spear*, 520 U.S. 154, 175 (1997).  Here, the statute commands that EPA "*shall* review the regulations.*"* 33 U.S.C. §1345(d)(2)(C) (emphasis added).  The parties do not contest that this language imposes a non-discretionary duty to *review* the regulations on a biennial basis.  But Congress did not mandate that EPA "shall" review the existing regulations "*and*" identify and regulate additional pollutants.  *See Friends of the Earth v. EPA*, 934 F. Supp. 2d 40, 49 (D.D.C. 2013) ("Here, the statute does not mandate that the Administrator 'shall' make an endangerment finding '*and*' take some action based on that review."); *cf., e.g.*, 33 U.S.C. § 1314(a)(9)(B) (commanding that the Administrator "shall review *and*, as necessary, *revise* the water quality criteria" (emphases added)).  Instead, Congress specified that EPA "shall" review the regulations "for the purpose" of identifying and regulating additional pollutants consistent with the requirements of Section 405(d)(2)(A).  33 U.S.C. § 1345(d)(2).

The phrase "for the purpose of" imposes, at most, a prospective duty. *See For Purpose Of*, Black's Law Dictionary 773 (rev. 4th ed. 1968) ("With the intention of."); *Purpose*, *id.* at 1400 ("That which one sets before him to accomplish; an end, intention, or aim, object, plan, project.").  Put simply, the statute requires that EPA review its existing regulations to facilitate the *subsequent* identification and regulation of pollutants that may adversely affect public health or the environment.  Given this sequence, the statute's biennial deadline applies only to the "shall review" command, and not to any subsequent identification or regulation that may result from that

6

review. Accordingly, § 405(d)(2) furnishes no clear deadline by which EPA must identify or regulate pollutants after conducting its review of existing regulations.

Because § 405(d)(2) imposes no date-certain deadline for the identification or regulation of additional pollutants, the Court will dismiss the plaintiffs' failure-to-perform claims under the CWA for lack of subject-matter jurisdiction. *See Wheeler*, 956 F.3d at 618.

**B.     APA Claims**

The Court next turns to the plaintiffs' APA claims. The APA authorizes judicial review of a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). To be deemed final, an agency action must (1) "mark the consummation of the agency's decisionmaking process" and (2) be an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177–78 (citation modified). An agency's *inaction* "may represent effectively final agency action . . . when administrative inaction has precisely the same impact on the rights of the parties as [a] denial of relief." *Thomas*, 828 F. 2d at 793 (citation modified). A reviewing court shall set aside a final agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The plaintiffs assert that EPA's failure to list the Table 1 PFAS substances in its Biennial Report was arbitrary and capricious. Pls.' Opp'n at 16–17; Sec. Am. Compl. ¶ 4. The plaintiffs have identified an agency action. *See* 5 U.S.C. § 551(13) (defining "agency action" to include a "failure to act"). But they fail to show that either the Biennial Report or EPA's failure to list certain PFAS in that report have any legal consequences that establish the finality required for APA review.

Start with the Biennial Report as an agency action. That report lists pollutants that EPA will assess for risk to public health or the environment. Even assuming that the report represents the consummation of EPA's decisionmaking process as to which pollutants to *identify* for regulation, the report neither determines any rights or obligations nor creates any legal consequences. Indeed, the report's introductory notice cautions that it is "not a regulation, nor does it change or substitute for any statutory provisions or EPA regulations" and disclaims any "legally binding requirements on EPA, states, tribes, or the regulated community." Biennial Report No. 9 at iii. "While disclaimers of that sort can carry little weight when they are boilerplate," the D.C. Circuit has "taken cognizance of such language when—as here—the rest of the document is similarly devoid of relevant commands to regulated parties." *Valero Energy Corp. v. EPA*, 927 F.3d 532, 536–37 (D.C. Cir. 2019) (citation modified). And looking to the "actual legal effect (or lack thereof) of the agency action in question on regulated entities," the report "does not tell regulated parties what they must do or may not do in order to avoid liability," "imposes no obligations or prohibitions on regulated entities," and "may not be the basis for an enforcement action against a regulated entity." *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014).

The plaintiffs contend that the report "allow[s] the continued application of harmful PFAS to farmland without regulation." Pls.' Opp'n at 18. But "these are practical consequences, not legal harms that can transform the [Biennial Report] into a final agency [action]." *Joshi v. Nat'l Transp. Safety Bd.*, 791 F.3d 8, 11–12 (D.C. Cir. 2015). At bottom, the report is "informational in nature," *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004), as it provides only "the approach used and the results of EPA's Biosolids [Biennial Review], covering 2020–2021," Biennial Report No. 9 at 1. "Compelling no one to do anything, the [report] had no binding

effect whatsoever[,] not on the agency and not on the regulated community." *Indep. Equip. Dealers*, 372 F.3d at 427. Accordingly, the Biennial Report is not a final agency action.

As an agency inaction, EPA's failure to list certain substances in the Biennial Report also lacks the same impact on the rights of parties as an express denial of relief. *Thomas*, 828 F.2d at 793. A decision not to list a particular pollutant in the Biennial Report does not constitute a refusal to regulate. *See Hi-Tech Pharmacal Co. v. USDA*, 587 F. Supp. 2d 1, 10 (D.D.C. 2020). *Contra* Pls.' Opp'n at 19. After all, a pollutant need not be identified in the report for EPA to regulate it. EPA Mot. at 11. And any interested party, including the plaintiffs, may still petition EPA under 5 U.S.C. § 553(e) to initiate a rulemaking to regulate any PFAS, regardless of whether it is listed in the report. *See* 5 U.S.C. § 553(e) ("Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."). The denial of such a petition could constitute a refusal to regulate. *See Massachusetts v. EPA*, 549 U.S. 497, 527–28 ("[A]gency refusals to initiate rulemaking . . . arise out of denials of petitions for rulemaking."). A failure to list certain pollutants in a report, however, does not. Without more, the plaintiffs fail to show that EPA's omission of certain substances from the Biennial Report is "the functional equivalent of final agency action." *Hi-Tech*, 587 F. Supp. 2d at 10.

Because the plaintiffs have not identified a final agency action, the Court will dismiss their arbitrary and capricious challenge to EPA's Biennial Report for failure to state a claim.

### C.  Unreasonable Delay

As to the plaintiffs' unreasonable-delay claims, the defendants argue that APA review is precluded because the CWA's citizen-suit provision provides an adequate judicial remedy. EPA Mot. at 7; *see* 5 U.S.C. § 704. In response, the plaintiffs agree that these claims "may be

dismissed." Pls.' Opp'n at 16; *see* EPA Reply at 16, Dkt. 1. Accordingly, the Court will dismiss the plaintiffs' unreasonable-delay claims without considering the merits and without prejudice.

For the foregoing reasons, it is

**ORDERED** that the federal defendants' Motion to Dismiss, Dkt. 13, as joined by NACWA, Dkt. 33, is **GRANTED**. Counts I and IV are **DISMISSED** without prejudice under Rule 12(b)(1). Count III is **DISMISSED** with prejudice under Rule 12(b)(6). Counts II and V are voluntarily **DISMISSED** without prejudice.

This is a final appealable order. The Clerk of Court is directed to close this case.

**So Ordered.**

DABNEY L. FRIEDRICH
United States District Judge

September 29, 2025